## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Tina Norris, Sally Michalak and Wendy Loepp individually and on behalf of all others similarly situated, | Case No.: 16-cv-03954-SRN-TNL The Honorable Tony N. Leung |
| Plaintiffs, | **BRIEF IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CONDITIONAL CERTIFICATION** |
| —vs.— | |
| Bluestem Brands, Inc., Blair, LLC, and Does 1–10, | |
| Defendants. | |

Defendants Bluestem Brands, Inc. and Blair LLC, through their undersigned counsel, state as follows for their Brief in Opposition to Plaintiffs' Renewed Motion for Conditional Certification.

## I.     Introduction

In opposing Plaintiffs' initial conditional certification motion, Defendants explained that no Minnesota court has granted a conditional certification on record similar to the one Plaintiffs advanced here.  In particular, Defendants noted that Plaintiffs failed to offer *any* evidence regarding two of the three facilities at issue, offered only conclusory declarations that failed to even suggest any common practice at the third, and wholly failed to show how employees across all three were similarly situated.  Nor, among other things, did Plaintiffs offer any justification—much less one predicated on substance or efficiency—for why the Court should authorize them to send notice of this overtime case to hundreds of part-time employees who indisputably have no claim.

Nothing has changed.  Indeed, despite the fact that four months have passed since Plaintiffs filed their initial motion—during which time Plaintiffs have actively promoted this case on social media and through a website—Plaintiffs now offer a single new declaration from the same facility as the others that suffers from the same flaws as the others.  What is more, Plaintiffs still rely almost entirely on their contention that "call center jobs are generally homogenous" (Pls.' Br. at 12, Docket No. 87), while still offering no meaningful evidence that could support a finding of a company-wide policy mandating or resulting in off-the-clock work.  And continuing to overlook the fact that they seek conditional certification of a class of employees that performed different jobs, worked at multiple different locations, and reported to multiple different supervisors, Plaintiffs offer the declarations of just five former employees from a single work location, all of which are devoid of any suggestion of a company-wide policy, plan, or decision that affected all of the employees they seek to represent.

Plaintiffs' evidentiary standard, while low, is "not invisible."  (Oct. 3, 2013, Order, *Williams v. Sykes Enters., Inc.*, Civ. No. 13-0946, at 6 (D. Minn. Oct. 3, 2013), Docket No. 79, Ex. 3).  They must offer more than vague assertions that unspecified persons or policies "required" them to work off the clock in order to show it would be appropriate for the Court to authorize notice to a putative class of approximately 1900 individuals.  Having failed to offer any evidence that they or the individuals they seek to represent are the victims of a single unlawful decision, policy, or plan, Plaintiffs' Motion must be denied.

## II.     Background

### A.     Procedural History

Plaintiff Tina Norris filed the above-captioned class and collective action against Defendants Blair LLC and Bluestem Brands, Inc., on November 18, 2016.  (Compl., Docket No 1).  In it, she purported to bring claims on behalf of herself and others "similarly situated" under the FLSA and Minnesota state law related to her former employment at a call center in Erie, Pennsylvania.  (*See id.*).  Almost three months later—and just days before her deadline to do so—Norris served process on Defendants. (Docket No. 9 (indicating service of process on Blair on Feb. 10, 2017); Docket No. 10 (indicating service of process on Bluestem on Feb. 13, 2017)); Fed. R. Civ. P. 4(m).

In the interim, on or before January 20, 2017, a website on "wageadvocates.com" was published describing the allegations in the lawsuit, touting the "experience" of the "wage and hour lawyers" who represent Norris, and inviting readers interested in "learn[ing] more about the call center worker's complaint" to "contact our attorneys today."  (Ex. A, Bluestem Brands Hit With Call Center Class Action, *available at* *http://wageadvocates.com/bluestem-blair/*, last visited August 6, 2017; Ex. B, Screenshot of Facebook post taken Apr. 7, 2017 (reflecting posting date of Jan. 20, 2017)).  This website was advertised through social media, garnering the "shares" and comments of hundreds.  (Ex. B).

On March 17, 2017, Plaintiffs filed their Motion for Conditional Certification and Notification to All Putative Class Members Under 29 U.S.C. § 216(b), seeking certification of a collective class of:

> All current and former Telephone Sales Agents, Customer
> Service Agents, or other job titles performing similar job
> duties employed by Bluestem Brands, Inc. and/or Blair, LLC
> ("Defendants"), at Defendants' call centers in Pennsylvania,
> at any time in the last three years, [who] were not paid for
> off-the-clock work during their preliminary 'boot-up' time
> and/or postliminary 'call completion' time.

(Pls.' Mot. at 1, Docket No. 23).   In support of their Motion, Plaintiffs offered the

declarations of just four individuals—the three named Plaintiffs and one additional opt-in

Plaintiff—all of whom worked in a single call center in Erie, Pennsylvania.  (Mar. 17,

2017, Decl. of M. Nephew and Exhibits, Docket No. No. 26).

        In response to a motion for partial dismissal filed by Defendants on March 31,

2017, Plaintiffs sought leave to amend their operative complaint a second time.  (Pls.'

Mot. for Leave to Amend, Docket No. 57).  On July 19, 2017, this Court granted

Plaintiffs' motion, and at the same time denied Plaintiffs' motion for conditional

certification without prejudice.  (Docket No. 75).  Seven days later, Plaintiffs filed this

Renewed Motion for Conditional Certification.  In support of this Renewed Motion—

filed eight months after the lawsuit was filed, five months after it was served, and four

months after Plaintiffs' initial motion for conditional certification was filed, Plaintiffs

offer just a single additional piece of "evidence"—one more declaration from an

individual employed at the same call center as Plaintiffs' first four declarants.  (*Compare*

Decls. of T. Norris, Docket No. 80, S. Michalak, Docket No. 81, W. Loepp, Docket No.

82, and N. Zipperi, Docket No. 83, *with* Decl. of R. Stef, Docket No. 84 (all indicating

declarants worked in call center in Erie)).  As discussed in more detail below, that

additional declaration—just like the first four—is devoid of the type of evidence

4

necessary to demonstrate the existence of a policy or practice that was common to the class Plaintiffs seek to conditionally certify.

### B. Allegations and Undisputed Facts

Defendant Blair LLC offers classic clothing and home goods through catalog and eCommerce sales. (Ex. C, Decl. of C. Dziendziel ¶ 3). Blair employs approximately 50 full-time and part-time Customer Service Representatives and about 100 full-time and part-time Telephone Sales Agents in Erie, Pennsylvania. (*Id.* ¶ 6). About 50 Customer Service Agents and 75 Telephone Sales Agents work at Blair's call center in Warren, Pennsylvania. (*Id.* ¶ 7). Within the past three years, Blair also operated a now-closed call center in Franklin, Pennsylvania, where sales and customer service agents worked. (*Id.* ¶ 8).

Telephone Sales Agents and Customer Service Agents perform different job functions. On the one hand, Telephone Sales Agents take incoming calls from customers who place orders for Blair's products. (Ex. C ¶ 11; Ex. D ¶ 4; Ex. E ¶ 5; Ex. G ¶ 7; Ex. I ¶ 4; Ex. J ¶ 4; Ex. L ¶ 4; Ex. M ¶ 5; Ex. N ¶ 5; Ex. P ¶ 5; Ex. Q ¶ 5; Ex. R ¶ 9; Ex. T ¶ 5). They also up-sell various products, sell credit cards, and sell membership rewards programs to customers who call in. (Ex. C ¶ 11; Ex. D ¶ 4; Ex. E ¶ 5; Ex. G ¶ 7; Ex. I ¶ 4; Ex. J ¶ 4; Ex. L ¶ 4; Ex. M ¶ 5; Ex. N ¶ 5; Ex. P ¶ 5; Ex. Q ¶ 5; Ex. R ¶ 9; Ex. T ¶ 5). On the other hand, Customer Service Agents take incoming calls from customers and work with them to resolve issues regarding orders they have already placed and/or received. (Ex. C ¶ 12; Ex. F ¶ 5; Ex. H ¶ 5; Ex. K ¶ 7; Ex. O ¶ 6; Ex. S ¶ 5). They may

also place orders for customers who call in with service questions.  (Ex. C ¶ 12; Ex. F ¶ 5; Ex. H ¶ 5; Ex. S ¶ 5).

Both Telephone Sales Agents and Customer Service Agents receive job training at the call centers where they work.  (Ex. C ¶ 13; Ex. J ¶¶ 10–12).  The trainings are facilitated by local personnel.  (Ex. C ¶ 13; Ex. J ¶¶ 10–12).  Indeed, sometimes more experienced Telephone Sales Agents at the relevant facility will lead the training sessions.  (Ex. C ¶ 13; Ex. J ¶¶ 10–12).

Moreover, both Telephone Sales Agents and Customer Service Agents report to local supervisors.  More specifically, these employees are organized into "teams" of 10 to 15 employees who report to a supervisor.  (Ex. C ¶ 16; Ex. G ¶ 5; Ex. L ¶ 6; Ex. S ¶ 4).  These supervisors provide day-to-day direct supervision and management over their direct reports.  (Ex. C ¶ 17).  They have the authority and discretion to resolve many questions that arise about employees' jobs, including questions related to time and attendance.  (Ex. C ¶ 17; Ex. E ¶ 6; Ex. G ¶¶ 5, 6; Ex. I ¶ 5; Ex. K ¶ 5; Ex. L ¶ 7; Ex. M ¶ 6; Ex. N ¶ 6; Ex. O ¶ 4; Ex. Q ¶ 6; Ex. T ¶ 6).  Supervisors also take the lead on coaching and disciplining employees regarding compliance with Blair's time and attendance policies.  (Ex. C ¶ 18; Ex. J ¶ 8; Ex. R ¶ 8).

All told, within the last three years, Blair has employed between 22 and 34 supervisors at any given time.  (Ex. C ¶ 19).  And during that time period, those individuals supervised approximately 1900 current and former Telephone Sales Agents

and Customer Service Agents who worked in three different call centers in Pennsylvania. (*Id.* ¶ 9).[1]

### 1. Plaintiffs offer no evidence of corporate policies resulting in the overtime violations they allege, instead relying on five declarations that offer no personal knowledge of an alleged uniformity across the proposed class.

Despite the breadth of their proposed collective class, Plaintiffs offer in support of their Motion just five declarations of former employees who worked at a single call center: the Blair call center in Erie, Pennsylvania.  (*See* Pls.' Declarations, Docket Nos. 80 through 84).  They seek conditional certification related to alleged overtime violations[2] based upon two distinct theories.

First, Plaintiffs claim they were "required"—by whom they do not say—to perform work-related tasks before they clocked in for the day in order "to be ready to begin taking calls by the technical start times of [their] shifts."  (Norris Decl. ¶ 7; Michalak Decl. ¶ 7; Loepp Decl. ¶ 7; Zipperi Decl. ¶ 7, Steph Decl. ¶ 7). Tellingly, both the pre-shift tasks Plaintiffs identify and the length of time they claim it took to perform them vary.  Some Plaintiffs claim they were required to open Sharepoint (Norris Decl. ¶

---

[1] A fourth facility, located in Jessup, Pennsylvania, is owned by Haband Company LLC. (Ex. C ¶ 23).  Bluestem Brands, Inc. is a parent company of Haband, but Blair LLC has no ownership interest in Haband.  (*Id.*).  As Defendants have previously explained, the Haband facility is a mail processing center, not a call center, and Plaintiffs have previously represented to this Court that they do not seek inclusion of the Haband facility in their proposed class.  (Defs.' Opp. to Pls.' Mot. for Conditional Certification at p. 7 n.2, Docket No. 46).

[2] Plaintiffs have not alleged any minimum wage violations under the Fair Labor Standards Act.  (*See* Second Am. Compl. ¶¶ 89–106).

7; Michalak Decl. ¶ 7; Zipperi Decl. ¶ 7); two allege they checked their email (Norris Decl. ¶ 7, Stef Decl. ¶ 7); two others allege they opened an "order entry" or "order taking" program (Michalak Decl. ¶ 7, Stef Decl. ¶ 7); another claims she pulled up the company's online catalog (Michalak Decl. ¶ 7); and yet another claims she stocked her workstation with paper copies of catalogs (Loepp Decl. ¶ 7). These tasks allegedly took the Plaintiffs anywhere from five minutes (Stef Decl. ¶ 7) to 15 minutes (Zipperi Decl. ¶ 7) to perform.

Second, Plaintiffs claim that their final calls of the day "would regularly last" for seven minutes or less past the end of their shifts. (Norris Decl. ¶ 8; Michalak Decl. ¶ 8; Zipperi Decl. ¶ 8, Loepp Decl. ¶ 8). Offering no explanation or support for this beyond boilerplate assertions, Plaintiffs claim they would not be compensated for this time based on Blair's policy of rounding time worked after the end of the shift to the nearest quarter hour. (*See* Norris Decl. ¶¶ 8, 9; Michalak Decl. ¶¶ 8, 9; Loepp Decl. ¶ 8, 9; Zipperi Decl. ¶¶ 8, 9, Stef Decl. ¶¶ 8, 9). But although mentioned nowhere in Plaintiffs' brief, the FLSA has long recognized the legality of rounding policies, including how they benefit employees by providing them compensation for time they did not work. *See* 29 C.F.R. § 785.48(b).[3] Yet Plaintiffs here point to nothing but boilerplate assertions to overcome an irrefutably lawful practice.

---

[3] For example, if an employer has a policy of rounding timeclock punches to the nearest even 10-minute increment, an employee who clocks out at 5:03 p.m. would only be paid as if she worked until 5:00 p.m. on that day. Likewise, if the same employee clocks out at 5:07 p.m. on a different day, the employee would be paid as if she worked until 5:10 p.m.—receiving pay for three minutes that she did not work. Thus, in this example, the

Beyond their five conclusory declarations, Plaintiffs offer only the following to support conditional certification of a class of approximately 1900 other current and former employees reporting to different supervisors and performing different jobs in different locations at different times:

- Two company documents suggesting employees perform certain tasks "daily," or "at the beginning of"—but, tellingly, not before—the start of their shift (Docket No. 14-7);

- A Telephone Sales Agent job description, which says nothing about pre- or post-shift duties or tasks (Docket No. 14-1);

- A single pay stub reflecting that Plaintiff Tina Norris reported and was paid overtime (Docket No. 14-6); and

- A document—which appears to have been printed from the Department of Labor's website—that explains the FLSA permits "rounding" practices, which Plaintiff Norris claims she was provided by Blair (Docket No. 14-8; Norris Decl. ¶ 10).

Indeed, the evidence that is missing from Plaintiffs' motion for conditional certification is far more significant than the evidence they have provided.  Despite having continued to solicit additional class members since they filed their first conditional certification motion nearly five months ago, Plaintiffs still do *not* offer:

- Any company document that instructs employees to perform, or implies employees should perform, any work-related tasks before their shift begins or after it ends;

- Any instance of training, instruction, or conversation during which a supervisor or manager instructed them to log into their time keeping system only after completing other morning start-up procedures or be ready to take calls "at the technical start times of [their] shifts;"

---

rounding policy "averages out" so that the employee has been compensated for all hours worked on these two days.

- Any instance of discipline or reprimand for logging into the company's timekeeping system before completing morning start-up tasks or failing to be ready to take calls "at the technical start times of [their] shifts;"

- Any basis upon which they can claim to have personal knowledge that Blair employees other than themselves performed off-the-clock work;

- Any evidence that any employee's final calls other than their own "would regularly last" less than seven minutes past the end of their shift;

- Any evidence that Defendants' rounding policy did not average out over time such that Plaintiffs were not compensated for the time they actually worked after the end of their shift; or

- Any evidence whatsoever of policies or practices at call centers other than the one in Erie, Pennsylvania.

### 2. Defendants' evidence confirms there is no policy requiring employees to perform off-the-clock work.

Blair's evidence, moreover, confirms what is implicit in Plaintiffs' gaunt evidentiary offering: that no company-wide policy or practice requiring or resulting in uncompensated or off-the-clock work exists.

To start, Blair trains its employees to log into their timekeeping system and clock in for the day before completing any work-related tasks, and to log out at the end of the day after all work-related tasks are completed.  (Ex. C ¶ 14).  Blair also has a policy requiring employees to report all time worked, and of paying overtime to any employees who worked over forty hours in a week.  (Ex. U, Core Policy Guide excerpts).  Finally, Blair's rounding policy ensures that any post-shift work is paid to the nearest quarter hour—meaning that if an agent's final call lasts past the end of her shift by seven minutes

or less, her work day is rounded down to the scheduled end of her shift; but if the final call lasts past the end of her shift by eight or more minutes, she receives additional compensation rounded to the next quarter hour.  (Ex. C ¶ 20).

Within this framework of lawful policies prohibiting off-the-clock work and ensuring payment for all time worked, the declarations of 17 additional employees from both the Warren and Erie call centers reflect a wide range of preferences and practices as to which computer programs and websites employees choose to open at the beginning of their shift—always <u>after</u> clocking in for the day.  For example, some employees clock in and then open just their customer order entry interface at the beginning of their shift. (Ex. D ¶¶ 8, 9; Ex. E ¶ 9; Ex. N ¶ 10; Ex. P ¶ 8; Ex. T ¶ 10).  These employees might open other programs throughout the day as needed, while on a call with a customer or while waiting for a call to come in.  (Ex. D ¶ 10; Ex. E ¶ 10; Ex. K ¶ 10; Ex. P ¶ 9; Ex. T ¶ 11).  Other employees typically take a few moments at the beginning of their shift to open all the programs they might need during the day, before they take their first call. (Ex. F ¶ 12; Ex. G ¶ 11; Ex. I ¶ 11; Ex. M ¶ 8; Ex. O ¶ 8; Ex. Q ¶ 13; Ex. S ¶ 8).  Still others open the programs they need during their first call of the day.  (Ex. E ¶ 10; Ex. H ¶ 12; Ex. I ¶ 11; Ex. K ¶ 10; Ex. N ¶ 10; Ex. P ¶ 9).  In all cases, these employees clock in to Blair's timekeeping system before performing any work-related tasks.  (Ex. D ¶ 8; Ex. E ¶ 9; Ex. F ¶ 10; Ex. G ¶ 9; Ex. H ¶ 10; Ex. I ¶ 9; Ex. J ¶ 13; Ex. K ¶ 9; Ex. L ¶ 9; Ex. M. ¶ 10; Ex. N ¶ 10; Ex. O ¶ 8; Ex. P ¶ 8; Ex. Q ¶ 12; Ex. S ¶ 8; Ex. T ¶ 9).  The time it takes them to perform these tasks varies and typically takes from just a few seconds to three minutes or less.  (Ex. D ¶ 8; Ex. E ¶ 9; Ex. F ¶ 11; Ex. G ¶ 13; Ex. I ¶ 11; Ex. K ¶ 9;

Ex. M ¶¶ 8, 9; Ex. N ¶ 10; Ex. O ¶ 8; Ex. P ¶ 8; Ex. Q ¶ 13; Ex. R ¶ 11; Ex. S ¶ 8).

Consistent with this, employees also report starting these tasks after the time their shift

was scheduled to begin.  (Ex. F ¶ 12; Ex. H ¶ 14; Ex. I ¶ 8; Ex. L ¶ 11; Ex. P ¶ 8; Ex. T ¶

11).

Defendants' employee declarations also reflect wide variation in the length of

employees' final calls, with some calls ending right at the end of a scheduled shift; some

lasting less than seven minutes past the end of the shift; and some lasting longer than

seven minutes past the end of the shift.  (Ex. D ¶ 11; Ex. E ¶ 11; Ex. F ¶ 13; Ex. G ¶ 18;

Ex. H ¶ 15; Ex. I ¶ 12; Ex. J ¶ 15; Ex. K ¶ 13; Ex. L ¶ 12; Ex. M ¶ 12; Ex. N ¶ 11; Ex. O

¶ 10; Ex. P ¶ 10; Ex. Q ¶ 15; Ex. R ¶ 13; Ex. S ¶ 10; Ex. T ¶ 12).  And as Plaintiffs

concede and time records confirm, time spent working past the end of the shift is rounded

to the nearest quarter hour, such that employees whose final calls last more than seven

minutes past the end of their shift are paid through the next quarter hour increment.

(Norris Decl. ¶ 8; Michalak Decl. ¶ 8; Zipperi Decl. ¶ 8; Ex. C ¶ 21; Ex. V, Tina Norris

Kronos Record from December 10, 2014 (reflecting end-of-shift clock out at 8:09 p.m., 9

minutes past the end of her shift, and total time worked counted as if her clock-out time

was 8:15 p.m.)).

Moreover, these employees confirm having reported to different supervisors in a

localized management structure in which supervisors oversaw small teams of 10 to 15

employees.  (Ex. G ¶ 5; Ex. L ¶ 6; Ex. S ¶ 4).  And they further confirm that these

supervisors have the discretion to provide initial support and response in the event of

their employees' questions regarding daily work issues, including time and attendance

reporting.  (Ex. E ¶ 6; Ex. G ¶¶ 5, 6; Ex. I ¶ 5; Ex. J ¶ 8; Ex. K ¶ 5; Ex. L ¶ 7; Ex. M ¶ 6; Ex. N ¶ 6; Ex. O ¶ 4; Ex. Q ¶ 6; Ex. R ¶ 8; Ex. T ¶ 6).

## III.   Conditional Certification Standard

Section 216(b) of the FLSA authorizes employees to bring collective actions to recover allegedly unpaid wages on behalf of themselves and "other employees similarly situated."  29 U.S.C. § 216(b).  To satisfy the "similarly situated" requirement, Plaintiffs must offer "substantial allegations" that they "and potential plaintiffs were victims of a common policy or plan that violated the law."  *Putnam v. Galaxy 1 Mktg.*, 276 F.R.D. 264, 269, 270 (S.D. Iowa 2011) (quotations and citations omitted); *Andersen v. Wells Fargo Fin., Inc.*, No. 4:11-cv-00085, 2012 WL 12871958, at *2 (S.D. Iowa Feb. 6, 2012); *see also Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014) (the term "similarly situated" "typically requires a showing that an employer's commonly applied decision, policy, or plan similarly affects the potential class members, and inflicts a common injury on plaintiffs and the putative class" (citations and quotations omitted).

District courts have wide discretion in determining whether to conditionally certify a collective action; and in exercising that discretion, they consider whether judicial efficiency would be served by conditional certification.  *Hoffman La-Roche, Inc. v. Sperling*, 493 U.S. 165, 170–73 (1989) (noting the opt-in mechanism established by the Portal-to-Portal Act was meant to limit employees' ability to proceed collectively and district court's obligation to ensure collective actions proceed in an "efficient and proper way"); *Knutson v. Blue Cross & Blue Shield of Minn.*, Civ. No. 08-584 (RHK/JSM), 2008 WL 4371382, at *2 (D. Minn. Sept. 23, 2008) ("[T]he power to authorize notice to

potential plaintiffs is to be exercised . . . only in appropriate cases, and remains within the discretion of the district court" (citations and quotations omitted)); *Andersen*, 2012 WL 12871958, at *3 (courts are "required" to determine whether a collective action would result in an unmanageable trial).  Consistent with this policy consideration, courts deny conditional certification in cases that necessarily involve individualized determinations and "case-by-case inquiries."  *See, e.g.*, *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (rejecting conditional certification because assessing damages would "require a case-by-case inquiry, thereby rendering it impossible to try this case as a collective action").

And while courts do not make merits determinations in considering conditional certification motions, even in the face of "contrary evidence" presented by the defendant (Pls.' Br. at 11), "the Court is not expected to ignore evidence offered by Defendants. Indeed, the evidence Defendants offer is relevant, if nothing else, to the context in which Plaintiffs' evidence is offered."  *Williams v. Sykes Enters., Inc.*, No. 13-0946 (D. Minn. Oct. 3, 2013) (cited by Plaintiffs and filed at Docket No. 79); *see also West v. Border Foods, Inc.*, Civil No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *7 (D. Minn. July 10, 2006) ("[N]either the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper."); *Shoots v. iQor Holdings US Inc.*, Civil No. 15-CV-563 (SRN/SER), 2015 WL 6150862, at *18 (D. Minn. Oct. 19, 2015) ("The Court does not reject Defendant's declaration out of hand, but has instead considered all of the evidence."); *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 942 (D. Minn. 2009)

("[T]he Court is unaware of any court that has agreed with plaintiffs' position that evidence submitted by a defendant resisting conditional certification should be completely ignored.").

**IV.    Argument**

Plaintiffs' initial motion for conditional certification had been fully submitted to this Court before it was denied without prejudice.  Plaintiffs' evidentiary offering remains insufficient.  For the reasons discussed below, Plaintiffs' renewed motion for conditional certification should be denied.

**A.    Courts Regularly Deny Conditional Certification Motions in Call Center Cases.**

 In moving for conditional certification, Plaintiffs devote less than two pages of their 28 page brief to explaining why their evidence entitles them to a conditionally certified class.  Maybe because of this, Plaintiffs lead with generalities, first arguing that "[c]ourts routinely conditionally certify calls [*sic*] center cases because call center jobs are generally homogenous."  (Pls.' Br. at 12).  But this is both irrelevant and inaccurate. To begin, the question is not whether jobs are "generally homogenous" but whether the alleged class is a victim of a "common policy or plan that violated the law."  *Putnam*, 276 F.R.D., at 269; *Chin*, 57 F. Supp. 3d, at 1083.  If mere job homogeneity were sufficient, then courts could automatically conditionally certify classes based on job duties alone, without even considering whether the alleged class had made *any* showing of a common injury.  But as Plaintiffs' own authority shows, that is not the law.  Indeed, the

conditional certification standard—while lenient—is "not invisible." (Oct. 3, 2013,

Order, *Williams v. Sykes Enters., Inc.*, Civ. No. 13-0946, at 6).

Consistent with these standards, courts in this circuit regularly deny motions for

conditional certification in call center cases in which plaintiffs fail to make an evidentiary

showing of a common injury. *See, e.g.*, *Andersen*, 2012 WL 12871958 (denying

conditional certification in call center case regarding single work location where

plaintiffs failed to offer evidence regarding why they believed their employer required

them to perform pre-shift, off-the-clock work); *Andrews v. Appletree Answering Serv.*,

No. 4:11 CV 2227 RWS, 2012 WL 2339322 (E.D. Mo. June 19, 2012) (denying

conditional certification in call center case regarding multiple geographic locations where

plaintiffs worked at one location and did not observe the policies and practices at call

centers other than their own); *Knutson*, 2008 WL 4371382 (denying conditional

certification in call center case where plaintiff could not show that other putative class

members were sufficiently interested in joining the action).[4]

---

[4] Courts outside this circuit do the same. *See, e.g.*, *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431 (S.D. Ind. 2012) (denying conditional certification of class seeking payment for pre- and post-shift work because plaintiffs failed to establish company-wide policy or practice extending beyond the requirements of their own specific supervisors); *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-cv-00470-T-27TBM, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) (denying conditional certification because plaintiffs alleged "widely divergent" theories of liability, including variation in alleged pre- and post-shift tasks and the time it took to perform them); *Richardson v. Wells Fargo Bank, N.A.*, Civil Case No. 4:11-CV-00738, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012) ("Plaintiffs have not produced evidence that Defendant has had in the past or now has a national, company-wide decision, policy, or plan to deny personal bankers overtime pay.").

In fact, in every case Plaintiffs cite to support the proposition that conditional certification in call center cases is "routine," the plaintiffs made a specific evidentiary showing of a common policy or practice that inflicted a common injury on the collective class. *See, e.g.*, *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181 (D. Minn. 2007) (granting conditional certification where defendant admitted to centralized policies and practices such as using its employees' phone log-in as their time clock and requiring employees to perform other duties before accepting calls); *Shoots*, 2015 WL 6150862, at *18 (granting conditional certification in call center case where "uniformity among [putative class members] using [the challenged timekeeping system] for timekeeping purposes appears to be present because collectively, Plaintiffs' declarants work or worked in at least six different states"); *Jennings v. Cellco P'ship*, Civil No. 12-00293 (SRN/TNL), 2012 WL 2568146 (D. Minn. July 2, 2012) (concluding the defendant had trained and instructed call center representatives working at a single call center under common management to perform certain tasks before and after their shift); *Williams*, Civ. No. 13-0946, at 1, 8, 9 (Docket No. 26-7) (concluding 31 declarations from 11 of the 22 call centers at issue was "evidence that [the challenged practice] was, in fact, a company-wide policy" where declarants universally claimed they were, among other things, "automatically clocked out" at the end of their shift but required to remain on their calls until complete).[5]

---

[5] The cases Plaintiffs cite from outside the Eighth Circuit are similarly distinguishable. *See Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365 (W.D. Va. 2012) (defendant conceded 22 declarants attesting to their personal knowledge regarding policies and practices at

As explained below, Plaintiffs fail to make any such showing here.  Indeed, far from being a "routine," the Court should deny Plaintiffs' Motion because they have not "present[ed] a threshold amount of evidence for this Court to find that there are similarly situated employees" at the call centers Plaintiffs include in their putative class.  *Andersen*, 2012 WL 12871958, at *4.

### B.   Plaintiffs Have Not Offered Substantial Allegations To Support the Existence of a Common Policy or Practice That Violated the Law.

Plaintiffs' request for conditional certification fails because they have not offered substantial allegations regarding the existence of a common policy or practice that violated the law.  At every level, Plaintiffs fail to support their Motion with even "modest" evidence of class wide claims.  This is true of the Franklin and Warren facilities, where Plaintiffs offer allegations but no evidence of a common policy or plan, and of the Erie facility, where they offer allegations and evidence in the form of their

---

only two call centers at issue in plaintiffs' motion was sufficient to support conditional certification); *Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819 (E.D. Mich. 2009) (plaintiffs supported allegations of uniformly applied policy that subjected employees to discipline for their failure to have computer and software applications loaded at start of scheduled shift with 67 declarations and deposition testimony of eight individuals who worked at multiple locations in putative class); *Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344 (W.D.N.Y. May 11, 2007) (company-wide practice was to automatically deduct 60 minutes of time from employees' wages for meal breaks, without regard to whether or not employee actually worked during that time); *Hens v. Clientlogic Operating Corp.*, No. 05-cv-381S, 2006 WL 2795620 (W.D.N.Y Sept. 26, 2006) (plaintiffs offered evidence that defendant instructed employees during formal training to arrive before shift to boot up computers, load applications, and check e-mail); *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601 (S.D. Tex. 2005) (small class of employees at a single facility were subject to the same company policy of requiring employees to perform pre- and post-shift, off-the-clock tasks).

own declarations, but in such vague and conclusory terms that they fail to satisfy even

their lenient conditional certification standard.

### 1.    Plaintiffs offer no evidence that a shadow policy requiring unpaid pre-shift work exists on a company-wide basis.

As a threshold matter, Plaintiffs do not—and cannot—offer any evidence that

Blair has a formal policy or practice requiring employees to perform uncompensated pre-

shift work.  Indeed, Blair's policies expressly require employees to record all hours

worked.  (Ex. U (in "FLSA Status" section, noting "Non-exempt Associates need to

complete daily time records in the time management system to reflect the exact hours

worked each day")).  And the Company indisputably pays overtime compensation for all

recorded work hours.  (Norris Paystubs, Docket No. 14-6).  Thus, while Plaintiffs make

generic references to a purported (and undocumented) "policy" and vague references to

allegedly being "required" by unspecified persons to perform work before clocking-in,

what they are really saying is that Blair has some sort of unwritten "shadow" policy that

contravenes its official policies.[6]

---

[6] In the reply brief Plaintiffs previously submitted in support of their initial motion for conditional certification, Plaintiffs quoted this Court's order in *Williams v. Sykes Enterprises, Inc.*, for the proposition that "[i]dentifying a specific policy in an employment manual is not necessary," and Plaintiffs need do no more than "merely establish, by affidavit, a colorable basis for their claim that the putative class members were victims of a common practice of not compensating employees."  (Pls.' Reply Br. pp. 1, 4, Docket No. 50 (quotations omitted)).  It is true Plaintiffs need not identify a documented, unlawful, and company-wide policy to satisfy their evidentiary standard on conditional certification.  But in the absence of such a policy, they must offer some plausible evidence from which the Court can infer they and similarly situated class members were subject to a *common* policy or practice that violated the law.  *See generally supra*, Part IV.A.  In *Sykes*, the plaintiffs satisfied that burden by offering the

But "shadow policy" classes like this are almost never conditionally certified, and for good reason: an employer's documents are seldom available to show it centrally mandates *not* to do what its policies say, and courts are not willing to extrapolate broadly from the personal experiences of individual declarants.[7] *See, e.g.*, *West*, 2006 WL 1892527, at *6 (holding declarations offered by "a limited sampling of [six out of approximately 240] employees does not support the Plaintiffs' assertion of widespread violations resulting from a common policy or plan [of requiring off-the-clock work]"); *Thompson v. Speedway SuperAmerica LLC*, No. 08-CV-1107(PJS/RLE), 2009 WL 130069, at *2 (D. Minn. Jan. 20, 2009) (denying conditional certification and holding "plaintiffs must submit evidence that the *reason* why the employees were not compensated for these tasks is not because of human error or a rogue store manager, but because of a corporate decision to ignore [defendant's] published policies and refuse to pay for answering work-related phone calls" (emphasis in original)); *Andersen*, 2012 WL 12871958 (denying conditional certification in call center case where the plaintiffs offered no information, such as evidence of training or statements by particular supervisors or managers, about how they came to believe Wells Fargo expected them to

---

declarations of 31 putative class members who worked in 11 of the 22 call centers at issue in the case. As discussed further in Subpart IV.B, Plaintiffs offer no such evidence here.

[7] In those rare circumstances where classes of this type are conditionally certified, such decisions are based upon evidence that, for example, the putative class is small and shares common management; the employer trained and instructed the employees as a group to perform work off the clock; or the employer concedes its timekeeping, policies, and time monitoring systems are centralized and uniform across the company. *See, e.g.*, *Jennings*, 2012 WL 2568146. None of these circumstances are present here.

perform pre-shift work off the clock); *Andrews*, 2012 WL 2339322 (denying conditional certification where plaintiffs offered declarations from individuals at a single work location and had no personal knowledge of policies or practices at locations encompassed by the putative class).

Plaintiffs' evidentiary showing here suffers from the same flaws that led federal courts to deny conditional certification in these cases. Lacking documentary evidence of any kind, Plaintiffs resort to the declarations of just five former employees from a single facility—one of whom admittedly does not even have an overtime claim—to establish that Blair has a company-wide policy of requiring uncompensated pre-shift work. But these declarations do not permit any reasonable class-wide inference. They offer no information about *who* directed Plaintiffs to perform pre-shift work; *what* was communicated to them regarding these alleged requirements; or *why* they believed they were required to perform this work. (*See* Norris Decl. ¶ 7; Michalak Decl. ¶ 7; Loepp Decl. ¶ 7; Zipperi Decl. ¶ 7; Stef Decl. ¶ 7).[8] These omissions are especially significant in light of the fact that both Telephone Sales Agencies and Customer Service Agents report to managers who supervise only small teams of employees—undercutting any suggestion that managerial directives were common across the alleged class. (Ex. C ¶ 16); *Simmons v. T-Mobile USA, Inc.*, Civil Action No. H-06-1820, 2007 WL 210008, at

---

[8] Similarly, Plaintiffs offer no basis from which the Court can infer Plaintiffs have personal knowledge of other employees' pre-shift activities, declaring only that they are "aware" of other employees who were "subjected to Defendants' same policies" regarding pre-shift work. (Norris Decl. ¶¶ 7, 11; Michalak Decl. ¶¶ 7, 10; Loepp Decl. ¶¶ 7, 10; Zipperi Decl. ¶¶ 7, 10; Stef Decl. ¶¶ 7, 10).

*6 (denying conditional certification and noting the implausibility of class-wide
violations where the case, "[a]t its most general level[,] . . . [was] a case involving claims
of 'off-the-clock' unpaid overtime, where allegedly dozens . . . of different low-level
supervisors with wide management discretion in practice violate Defendant's clear,
lawful written policies").

And more broadly, if generic assertions from former employees of one facility like
"Defendants required me and other Telephone and Customer Service Agents to be ready
to begin taking calls at the technical start times of our shifts"—which Plaintiffs offer
here—were sufficient to establish the existence of a company-wide policy cutting across
multiple facilities and dozens of supervisors, then the conditional certification standard
would essentially become toothless.  But that is not the law, and courts have repeatedly
made clear that the standard has bite.  *Andersen*, 2012 WL 12871958, at *4 (requiring a
"threshold amount of evidence" from which court could infer that other employees were
similarly situated to plaintiffs); *Hawkins*, 287 F.R.D. 431, at 439 (noting the evidentiary
requirement at the conditional certification stage is "not a mere formality," and "serves as
an important and functional step . . . because it would be a waste of the Court's and the
litigants' time and resources to notify a large and diverse class only to later determine
that the matter should not proceed as a collective action").

Indeed, in *Andersen v. Wells Fargo*, a district court in this circuit considered
nearly identical allegations and evidence of pre-shift work in a call center environment
and concluded conditional certification was not appropriate.  2012 WL 12871958.  In
*Andersen*, the plaintiffs sought conditional certification based upon allegations that they

were "required to be prepared to answer phone calls at the beginning of their scheduled

start time," and the affidavits of eight named and opt-in plaintiffs that asserted "in either

identical or nearly identical terms:"

> Each day, before my scheduled shift began, I was required to
> log into my computer and open numerous software
> applications.  I needed to use these software applications to
> perform my job duties.  **Wells Fargo expected me** and other
> Loan Officers to be ready to handle telephone calls . . . at the
> start of our scheduled shift.  Therefore, we needed to log-in to
> our computers and to open the software applications
> beforehand or we would not be ready to handle calls promptly
> at the start of our scheduled shift.

*Id.* at *1, 4 (emphasis in original).  The *Andersen* court denied conditional certification,

noting that it was "as interested in what the affidavits [did] not say as it [was] in what the

affidavits [did] say:"

> None of the affidavits, pleadings, or briefs state how the
> Plaintiffs knew that Wells Fargo expected them to work time
> additional to their scheduled shift without being paid for it,
> nor how Wells Fargo encouraged them to do so.  Merely
> stating the Defendants have a 'corporate practice' of not
> paying their employees for all the time they work does not
> convince the Court that the putative class can be meaningfully
> defined. . . .
>
> Plaintiffs have not alleged that any training program, any
> management employee of Wells Fargo, any of their direct
> supervisors, nor any fellow employee ever told them they
> must work overtime hours that should not be recorded on
> their time cards.
>
> Furthermore, the Plaintiffs have provided no evidence that
> any training, any management employee of Wells Fargo, any
> of their direct supervisors, nor any fellow employee ever
> implied that the Plaintiffs and other Loan Officers were
> required to work overtime hours that they should not record
> on their time cards.

*Id.* at *4.

Plaintiffs here cannot meaningfully distinguish their allegations or the evidence they offer from the allegations and evidence before the court in *Andersen*.  The declarations Plaintiffs offer are missing the same kinds of information the *Andersen* court found lacking.  Indeed, Plaintiffs' declarations are even less compelling than the *Andersen* plaintiffs': Plaintiffs offer a mere five declarations from individuals who worked in a single location to support a request to conditionally certify a class of about 1900 individuals in three different call centers; in contrast, the *Andersen* plaintiffs offered eight affidavits as evidence of commonality across 648 employees at just a single facility. *Id.* at *1, *4.

In sum, five declarations containing vague and conclusory statements about an alleged shadow policy requiring pre-shift work do not constitute "substantial allegations" that Defendants had a common, class-wide policy or practice that violated the law. Conditional certification regarding Plaintiffs' allegations of pre-shift work should be denied.

> **2.      Plaintiffs offer no evidence that Defendants' facially lawful rounding policy had a common result of necessitating off-the-clock work.**

Plaintiffs' post-shift allegations fare no better.  Plaintiffs say, as an initial matter, that if they had a call that lasted "seven minutes or less past our technical end time of our shifts, Defendants would not recognize this time as compensable and remove it from our hours worked during the day."  (Norris Decl. ¶ 8; Michalak Decl. ¶ 8; Zipperi Decl. ¶ 8,

Stef Decl. ¶ 8). But Plaintiffs fail to even acknowledge, let alone address, that

Defendants' policy of rounding time worked at the end of the shift to the nearest quarter

hour is lawful.  In fact, such a policy is expressly contemplated by the regulations

implementing the FLSA:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour.  Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work.  For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. 785.48(b); *see also Butcher v. Delta Mem'l Hosp.*, No. 5:12-cv-00241-SWW,

2013 WL 1668998, at *6 (E.D. Ark. Apr. 17, 2013) ("[F]acially neutral time rounding

practice[s]" are "sanctioned by Department of Labor regulations").

Plaintiffs thus base their post-shift time claim on a policy that is indisputably

lawful.  Case law is clear that "granting conditional certification based solely on

commonly applied lawful practices would make no sense."  *Maestas v. Day &*

*Zimmerman, LLC*, Civ. No. 09-019, 2010 U.S. Dist. LEXIS 143653, at *5–6 (D. N.M.

Jan. 4, 2010).  And while rounding policies may be challenged on the basis that they do

not result "over a period of time" in compensation properly "average[ing] out," Plaintiffs

do not even acknowledge this standard, much less make any effort to satisfy it.  *See id.*

(denying motion for reconsideration of order denying conditional certification where

plaintiffs alleged they were improperly classified as exempt employees but offered no evidence that the classification was <u>unlawful</u>).

What is more, cases where a facially lawful policy or practice has an allegedly unlawful application are typically certified only where the plaintiffs can show the allegedly unlawful result was *<u>common</u>* to the class, often through admissions from the defendant or presentation of a critical mass of declarations demonstrating that putative plaintiffs shared common experiences across locations and work groups. *Compare Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350(BSJ), 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) (denying conditional certification where plaintiff claimed written company-wide policies that limited overtime and incentivized increased sales resulted in de facto policy encouraging off-the-clock work, but provided no evidence beyond her own testimony that the challenged policies resulted in common FLSA violations) *and Boyd v. Alutiiq Global Solutions, LLC*, No. 11-cv-0753, 2011 WL 3511085, at *6 (N.D. Ill. Aug. 8, 2011) (denying conditional certification where plaintiff claimed employer's contract with government precluding overtime work on government project resulted in de facto policy requiring off-the-clock work where declarations of four individuals did not "identify to whom [the declarants] spoke, when those conversations occurred, or what specifically was discussed that would lead them to conclude that pay practices were 'consistent'") *with Burch*, 500 F. Supp. 2d at 1187 (granting conditional certification in call center case where defendant <u>admitted</u>, among other things, that its "phone log-in system serve[d] as the time clock for . . . putative class members; [and] . . . putative class members all [had] to log onto the computer, boot up several computer programs, and

perform other duties before accepting calls") *and Shoots*, 2015 WL 6150862, at *18 (concluding plaintiffs had presented declarations from sufficient number of different employees working in different locations that the court could infer uniformity across the putative class).

But Plaintiffs have failed to present <u>*any evidence at all*</u> that the allegedly unlawful result of the challenged rounding policy is common across the putative class.  Plaintiffs generally assert that their own final calls "would regularly last" from anywhere between 2 to 7 minutes, thus (allegedly) depriving them of any benefit of the rounding policy.[9]

---

[9] Three Plaintiffs, Michalak, Zipperi, and Stef, claim that only post-shift time spent on the phone—and not any time they spent working after the end of their final call—counted toward Blair's rounding policy; so, if they had a call that lasted seven minutes past the end of the shift, but worked an additional one or two minutes after the call, they claim their time would still be rounded down to the end of their shift.  As a threshold matter, this claim is irrelevant because Plaintiffs seek certification only with respect to allegedly unpaid *call completion* time (Pls.' Br. at 3), not other allegedly unpaid post-shift work.

But even if relevant, the claim is entirely inaccurate.  Plaintiffs logged into and out of Blair's timekeeping system, Kronos, independently of their work telephones.  (Ex. C ¶ 15).  Indeed, company records affirmatively demonstrate that Plaintiffs were paid for time spent working following the completion of a call.  On September 12, 2016, Plaintiff Michalak logged out of her work telephone at 5:36 p.m.  (*Id.* ¶ 22; Ex. W, Michalak Telephone Log Records for Sept. 12, 2016).  She did not punch out in Kronos, however, until 5:38 p.m.  (Ex. C ¶ 22; Ex. X, Michalak phone records for Sept. 12, 2016).  Thus, her time was rounded to the nearest quarter hour—5:45 p.m.—and she received the benefit of Blair's rounding policy even though her final call ended less than seven minutes past the end of her shift.  (Ex. C ¶ 22; Ex. X).

And even if it were Blair's practice to pay only for call completion time, and not for other post-shift work, with respect to Michalak, Zipperi, and Stef (and it is not), the silence of the two other declarants on this purported practice demonstrates the lack of any commonality across the putative class.  In sum, these allegations do not support conditional certification.

(Norris Decl. ¶ 8; Michalak Decl. ¶ 8; Zipperi Decl. ¶ 8, Stef Decl. ¶ 8).  But not a single

Plaintiff offers any evidence at all that the final calls of *other* employees would last a

similar length of time such that the Court can infer commonality across the class.  (*See*

*id.*)

Moreover, Defendants' evidence confirms that no such inference is appropriate.

Even at conditional certification, courts need not stick their "head[s] in the sand and

ignore" evidence in the record.  *Williams v. Angie's List, Inc*., Cause No. 1:16-cv-878-

WTL-MJD, 2016 WL 6996214, at *4 (S.D. Ind. Nov. 30, 2016) (internal quotation marks

and citation omitted).  And Defendants' evidence—that the length of other agents' final

calls varies widely, sometimes occurring at the end of the shift; sometimes lasting less

than seven minutes past the end of the shift; and sometimes lasting longer—stands

uncontested in the fact record before the Court.  (Ex. D ¶ 11; Ex. E ¶ 11; Ex. F ¶ 13; Ex.

---

Finally, in the reply brief Plaintiffs submitted in support of their initial motion for
conditional certification, Plaintiffs argued that these time records—which show, among
other things, a day on which Plaintiff Michalak logged in to the timekeeping system at
8:59 a.m., logged in to her telephone at 9:00 a.m., and took her first telephone call at 9:01
a.m.—"corroborate" Michalak's declaration in which she claims she performed
uncompensated work before she logged in to Blair's timekeeping system.  (Pls.' Reply
Br. p. 6, Docket No. 50).  Of course, these records "prove" nothing as it relates to
Michalak's statement, as they are entirely consistent with the 17 declarations of other call
center workers Defendants submitted in opposition to Plaintiffs' motion, which generally
indicate call center workers (1) log in to Blair's timekeeping system *before* opening any
other computer programs; and (2) take a moment or two to open any other programs they
might choose to use prior to taking their first call.  (*See generally* Exhibits D through X to
A. Murphy Decl.).  In sum, Exhibits X and Y prove Plaintiffs Michalak, Zipperi, and Stef
are incorrect when they claim they were not paid for any time spent between their last
call of the day and the time they logged out of the timekeeping system; but the same
Exhibits in no way "prove" what activities these Plaintiffs performed before they logged
in at the beginning of their shifts.

G ¶ 18; Ex. H ¶ 15; Ex. I ¶ 12; Ex. J ¶ 15; Ex. K ¶ 13; Ex. L ¶ 12; Ex. M ¶ 12; Ex. N ¶ 11; Ex. O ¶ 10; Ex. P ¶ 10; Ex. Q ¶ 15; Ex. R ¶ 13; Ex. S ¶ 10; Ex. T ¶ 12).

Plaintiffs have failed to provide any evidence at all that Defendants' rounding policy has a common unlawful effect across the putative class. Their request for conditional certification with respect to post-shift work should be denied.

### 3. Plaintiffs do not offer any evidence whatsoever regarding two of the three call centers at issue in this case.

For the reasons set forth above, Plaintiffs' Motion should be denied in its entirety. However, if the Court finds Plaintiffs' evidence sufficient to support conditional certification, any conditionally certified class should be limited to the call center in Erie, Pennsylvania, which is the *only* location about which Plaintiffs have offered any evidence.

In *Harris v. Chipotle Mexican Grill, Inc.*, the plaintiffs sought conditional certification of a nationwide class of current and former Chipotle employees based on five declarations—four of which worked at a single Chipotle location in Crystal, Minnesota—and internet postings from individuals who claimed to have worked for Chipotle in California and Illinois. 49 F. Supp. 3d 564, 578–79 (D. Minn. 2014). Judge Nelson of this Court concluded "such a limited sampling of employees does not support the Plaintiffs' assertion of widespread violations resulting from a common policy or plan," and limited the conditionally certified class to the one Chipotle location in Minnesota, at which four of the five declarants had worked. *Id.* at 579 (quotation and citation omitted).

Like the plaintiffs in the *Chipotle* case, Plaintiffs here have offered no evidence whatsoever that the policies and practices at the Blair facility in Erie are similar in any respect to those at the facility in Warren, Pennsylvania, or the now-closed facility in Franklin, Pennsylvania.  Accordingly, any conditionally certified class should be confined to individuals who worked in Erie.

### C.     Conditional Certification Is Not Appropriate Because Class Treatment of the Class Plaintiffs Propose Would Be Unmanageable.

Separate and apart from these issues, the Court should deny Plaintiffs' Motion because Plaintiffs' fail-safe class definition would require individual determinations of liability before notice could issue, resulting in individualized merits-based inquiries and unmanageable litigation.  A "fail safe" class is a class "that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim on the merits."  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).  Courts have recognized that "fail safe" class definitions "present myriad problems, including [that] . . . fundamentally, such a class definition would require an adjudication of the merits of each individual's claim to determine whether they are within the class, squandering whatever efficiency gains might be had from mass litigation." *Ruiz v. Citibank, N.A.*, Nos. 10 Civ. 5950(KPF)(RLE), 10 Civ. 7304(KPF)(RLE), 2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015), *aff'd*, 2017 WL 1379369 (2d Cir. Apr. 14, 2017).

Plaintiffs define their class with fail-safe characteristics, asking the Court to authorize notice to current and former employees who, among other things, "were not paid for off-the-clock work during their preliminary 'boot-up' time and postliminary 'call

completion.'"  (Pls.' Mot. at 3).  Before the parties could even determine who should receive notice, then, they would have to engage in individualized consideration of each person's claim on the merits—defeating the entire purpose of a purportedly more efficient conditionally certified class.

And this is more than a mere technical shortcoming.  The record reflects both Telephone Sales Agents and Customer Service Agents performing the tasks Plaintiffs complain of after clocking-in and after the start of their shifts—rendering the need for such an inquiry far from hypothetical.  (Ex. D ¶ 8; Ex. E ¶ 9; Ex. F ¶¶ 10, 12; Ex. G ¶ 9; Ex. H ¶¶ 10, 14; Ex. I ¶¶ 8, 9; Ex. J ¶ 13; Ex. K ¶ 9; Ex. L ¶¶ 9, 11; Ex. M. ¶ 10; Ex. N ¶ 10; Ex. O ¶ 8; Ex. P ¶ 8; Ex. Q ¶ 12; Ex. S ¶ 8; Ex. T ¶¶ 9, 11).  And the problems do not stop there.  In fact, Plaintiffs' evidentiary submission illustrates the shortcomings their class definition presents.

Consider Wendy Loepp's declaration and allegations.  Taking her allegations of unpaid pre- and post-shift time at face value, she would fall within the proposed class as a person who was "not paid for off-the-clock work."  (*See* Loepp Decl. ¶ 9).  But she has no viable claim for overtime under the FLSA[10] because she admits she "never worked 40 hours a week or more."  (Loepp Decl. ¶ 6).  At its core, the Court's discretion to issue notice of FLSA collective actions is "a tool for efficient case management."  *E.g.*, *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013).  But there is nothing efficient about sending notice to persons who do not have a claim, and it

---

[10] Plaintiffs have not pled a claim for minimum wage under the FLSA.

would be less efficient still to conditionally certify a class that is not even ascertainable until after the Court conducts merits-based inquires.  For this reason too, the Court should deny Plaintiffs' Motion.[11]

### D.     If Plaintiffs' Motion for Conditional Certification Is Granted, Plaintiffs Should Be Required To Revise the Proposed Notice.

If the Court grants Plaintiffs' Motion, it should deny several of Plaintiffs' proposals for the form of notice and the method through which it is disseminated.  First, the Court should deny Plaintiffs' request that Defendants be required to divulge each putative class members' "last known personal and work email addresses, and telephone numbers" and their proposal that notice be disseminated via e-mail in addition to U.S. Mail.  (Pls.' Br. at 17).  The disclosure of putative class members' telephone numbers is improper as "there are legitimate concerns with improper solicitation, even unintentional, and privacy that counsel against providing telephone numbers without some showing that notice by first-class mail is actually insufficient."  *Harvey v. AB Electrolux*, 857 F. Supp. 2d 815, 820 (N.D. Iowa 2012) (emphasis added).[12]

---

[11] Although this Court approved conditional certification of a class defined using substantially similar terms in *Williams v. Sykes Enterprises, Inc.*, Civ. No. 13-0946, (Docket No. 26-7), it appears the problems imposed by a fail-safe class definition were not considered by the Court.

[12] Indeed, many district courts within the Eighth Circuit hesitate to require disclosure of telephone numbers because "the prospect of providing personal telephone numbers to Plaintiff [is] unduly invasive of employees' and former employees' privacy."  *Davenport v. Charter Commc'ns, LLC*, No. 4:12CV0007 AGF, 2014 WL 1272783, at *8 (E.D. Mo. Mar. 27, 2014); *see also Holaway v. Stratasys, Inc.*, No. 12-998 (PAM/JSM), 2012 WL 12895690, at *3 (D. Minn. Oct. 30, 2012) ("As noted above, phone numbers are unreasonably intrusive."); *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d

Further, Plaintiffs should not be permitted to obtain putative class members' e-mail addresses for use in disseminating notice because their disclosure creates the same set of risks as the disclosure of telephone numbers.  While some courts in this circuit have required the disclosure of e-mail addresses, there is also recognition that e-mail addresses may be misused and their disclosure is otherwise unnecessary.  *See Espenscheid v. Directsat USA, LLC*, No. 09-cv-625-bbc, 2010 WL 2330309, at *14 (W.D. Wis. June 7, 2010) (explaining the dissemination of notice by e-mail creates a risk of "distortion[s] or misleading notification through modification of the notice itself or the addition of commentary."); *see also McCauley v. First Option Mortg., LLC*, No. 4:10CV980 JCH, 2010 WL 3522316, at *1, *4, n.9 (E.D. Mo. Sept. 2, 2010) (declining to require Defendant to produce employees' "personal information," including "home and cellular phone numbers" and "email addresses.").

Here, Plaintiffs have failed to offer a sufficient rationale—such as a non-speculative basis to believe notice by U.S. Mail would be insufficient—justifying the disclosure of private telephone numbers and e-mail addresses for purposes of disseminating notice, and their request for such information should therefore be denied.

Second, Plaintiffs request that "putative Class members be given the option to execute their Consent to Sue form online through an electronic signature service."  (Pls.' Br. at 22).  Defendants do not object to putative class members being permitted to opt in to the lawsuit electronically.  However, Defendants request that the Court permit them to

_____

1014, 1018-19 (E.D. Mo. 2010) (finding request to produce telephone numbers unwarranted).

review the electronic signature service portal or webpage—before putative class members may access it—to ensure there is nothing inappropriate, prejudicial, or that is otherwise inconsistent with the Court's instructions concerning notice.  Defendants also request that Plaintiffs be ordered to remove the webpage they have posted on wageadvocates.com to avoid the confusion that could arise from multiple webpages regarding this litigation.  The wageadvocates.com webpage presents both an unbalanced and inaccurate view of the case: it is unbalanced because it does not present Defendants' position; and it is inaccurate because, among other things, it refers to claims under Minnesota law, which are no longer before the Court.  (Ex. A).  To avoid the potential for confusion, the webpage should be removed.

Third, the Court should deny Plaintiffs' request that Defendant be compelled to post copies of the proposed notice at its premises.  (*See* Pls.' Br. at 22–23).  "[T]he posting of notice in the workplace adds little to the efficacy of mailed notice and may be redundant, confusing to other workers, and unduly burdensome for Defendants."  *Perrin v. Papa John's Int'l, Inc.*, No. 4:09CV01335 AGF, 2011 WL 4635140, at *2 (E.D. Mo. Oct. 4, 2011), *amended by Perrin v. Papa John's Int'l, Inc.*, No. 4:09CV01335 AGF, 2011 WL 4815066 (E.D. Mo. Oct. 11, 2011); *see also Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 500 (D. Neb. 2009) (denying request for workplace posting in the absence of "evidence [that] personal mailing will be an unreliable means of delivering notice to the putative plaintiffs").  Absent an articulable basis to believe mailing notice will not adequately inform the putative class members of their right to opt-in to the lawsuit, there is no benefit to requiring Defendants to post notice.

Fourth, the Court should deny Plaintiff's proposal for a 90-day notice period.  (*See* Pls.' Br. at 23).  Such a lengthy period of time has been held excessive by several district courts within the Eighth Circuit.  *See Tegtmeier v. PJ Iowa, L.C.*, No. 3:15-cv-00110-JEG, 2016 WL 5340186, at *9 (S.D. Iowa Sept. 21, 2016) (declining to authorize 90-day notice period); *Simmons et al. v. Valspar Corp.*, Civ. No. 10-3026 (RHK/SER), 2011 WL 1363988, at *5 (D. Minn. Apr. 11, 2011) (same).  Accordingly, Defendants propose a 45-day notice period, as "[f]orty-five days is sufficient time for putative plaintiffs to consider their options and, if desired, seek the assistance of outside counsel in deciding whether to join this lawsuit." *Martinez*, 265 F.R.D. at 501; *see also Greenwald v. Phillips Home Furnishings, Inc.*, No. 4:08CV1128 CDP, 2009 WL 1025545, at *1 (E.D. Mo. Apr. 15, 2009) (imposing 45-day notice period).   A 45-day notice period is especially appropriate here, where Plaintiffs have already made substantial efforts to solicit potential class members by publicizing the lawsuit on a webpage maintained by their attorneys as well as via social media.

Like the method, the form of notice proposed by Plaintiffs is inappropriate.  Specifically, use of the Court's caption in the notice is improper because it creates an unwarranted appearance of "judicial sponsorship" or endorsement of the lawsuit.  *See Martinez*, 265 F.R.D. at 499 ("placing the court name in the heading is improper because it may be misconstrued as judicial support for the plaintiffs' litigation." (citing *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982))).  Rather, any notice should appear on Plaintiffs' attorneys' letterhead and include a conspicuous disclaimer that the merits of the dispute have yet to be determined.  This approach will accord with the

guidance provided by the Supreme Court, which has explained that "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality," avoiding even "the appearance" of a judicial endorsement of the merits.  *Hoffmann-Law Roche Inc.*, 493 U.S. at 174.

Finally, the proposed consent form should alert putative class members to the fact that class members ultimately may become partially responsible for Bluestem's costs if Bluestem prevails.  Although some courts in this circuit have disagreed, *see Martinez*, 2013 WL 4028523, at *7, district courts in other jurisdictions have concluded that such a disclosure is necessary to fully inform the putative class members of the ramifications of opting in to the lawsuit.  *See, e.g.*, *Robbins v. Blazin Wings, Inc.*, No. 15-CV-6340 CJS, 2016 WL 1068201, at *7 (W.D.N.Y. Mar. 18, 2016); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11-cv-592-wmc, 2013 WL 3287634, at *7 (W.D. Wis. Mar. 21, 2013).

## V.  Conclusion

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiffs' Renewed Motion for Conditional Certification.

Dated:  August 7, 2017

FAEGRE BAKER DANIELS LLP

*s/ Andrew B. Murphy*
Andrew B. Murphy
  *Andrew.Murphy@FaegreBD.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766–8897
Facsimile: (612) 766–1600

Samantha M. Rollins
   *Samantha.Rollins@FaegreBD.com*
   (admitted *pro hac vice*)
801 Grand Ave., 33rd Floor
Des Moines, IA 50309
Telephone: (515) 447-4726
Facsimile: (515) 248-9010

*Attorneys for Defendants Bluestem Brands,
Inc. and Blair LLC*

37