## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Tina Norris, Sally Michalak, and Wendy Loepp, individually and on behalf of all others similarly situated, | Case No. 16-cv-3954 (SRN/TNL) |
| Plaintiffs, | |
| v. | **ORDER** |
| Bluestem Brands, Inc., Blair, LLC, and Does 1–10, | |
| Defendants. | |

Jacob R. Rusch and Molly Nephew, Johnson Becker PLLC, 444 Cedar Street, Suite 1800, Saint Paul MN 55101 (for Plaintiffs); and

Andrew B. Murphy, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis MN 55402 (for Defendants)

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff's Renewed Motion for Conditional Certification and Notification to All Putative Class Members Under 29 U.S.C. § 216(b). (ECF No. 77). For the reasons discussed below, the motion is granted in part and denied in part.

## I.   FACTUAL BACKGROUND

Defendant Bluestem Brands, Inc. (hereinafter "Bluestem") is a Delaware corporation headquartered in Eden Prairie, Minnesota. (Second Am. Compl. ¶¶ 3, 18, ECF No. 86). Bluestem operates a distribution center in St. Cloud, Minnesota. (Second Am. Compl. ¶ 18). Bluestem is a parent company to 13 e-commerce retail brands,

including Appleseed's and Blair, LLC (hereinafter "Blair"). (Second Am. Compl. ¶¶ 2, 4, 18, 20). Bluestem employs individuals at call centers as telephone customer support and salespersons. (Second Am. Compl. ¶ 3).

Defendant Blair is a Delaware limited liability company headquartered in Warren, Pennsylvania. (Second Am. Compl. ¶¶ 4, 20). Blair operates call centers in Warren and Erie, Pennsylvania. (Second Am. Compl. ¶¶ 4, 20). Blair does business as Appleseed's and Orchard Brands (hereinafter "Orchard"). (Second Am. Compl. ¶ 20).

Plaintiff Tina Norris is a resident of Erie, Pennsylvania and was employed as an hourly telephone sales agent from July 2013 through June 2016. (Second Am. Compl. ¶¶ 15, 30; *but see* Decl. of Tina Norris ¶ 3, ECF No. 80 (hired July 2014)). Norris worked full time, sometimes working in excess of 40 hours per week. (Second Am. Compl. ¶ 44). Norris worked at a call center in Erie, Pennsylvania. (Second Am. Compl. ¶ 30). Norris's hourly rate of pay was $8.51, plus commission received for up-selling customers. (Second Am. Compl. ¶ 30). At the end of her employment, Norris's hourly rate was $9.50 plus commission. (Second Am. Compl. ¶ 30). As a telephone sales agent, Norris's job duties included: answering customer telephone calls for placing orders for Blair, Orchard, and Bluestem products; up-selling customers on various products and programs; answering questions concerning products, such as sizing and pricing; and assisting the customer in substituting products if they wanted products that were out of stock or discontinued. (Second Am. Compl. ¶ 31). At the start of her employment, Norris answered telephone calls for Blair and Orchard and received policies and procedures referring to Blair and Orchard. (Second Am. Compl. ¶ 32). The building in which Norris

worked originally had the name Blair on it, but that was later changed to Orchard. (Second Am. Compl. ¶ 32). The name on the building changed again at a later date to Bluestem. (Second Am. Compl. ¶ 33). When the name on the building was changed, Norris was informed her employer was now Bluestem. (Second Am. Compl. ¶ 33).

Plaintiff Sally Michalak is a resident of Erie, Pennsylvania and was employed as an hourly customer service agent from August 2006 through January 20, 2017. (Second Am. Compl. ¶¶ 16, 34). Michalak worked full time, sometimes working in excess of 40 hours per week. (Second Am. Compl. ¶ 44). Michalak worked at the call center in Erie, Pennsylvania. (Second Am. Compl. ¶ 34). Michalak's hourly rate of pay was $11.90, plus commission. (Second Am. Compl. ¶ 34). As a customer service agent, Michalak's job duties included: answering customer telephone calls for placing orders; providing service to customers, including replacing damaged or defective product; and answering questions about products, such as sizing, measurements, and colors. (Second Am. Compl. ¶ 35). At the start of her employment, Michalak answered telephone calls for Blair and received policies and procedures referring to Blair. (Second Am. Compl. ¶ 36). The building in which Michalak worked originally had the name Blair on it, but that was later changed to Orchard. (Second Am. Compl. ¶ 36). The name on the building changed again at a later date to Bluestem. (Second Am. Compl. ¶ 37). When the name on the building was changed, Michalak was informed her employer was now Bluestem. (Second Am. Compl. ¶ 37). When Bluestem became her employer, Michalak accessed handbooks, policies, and catalogs electronically, rather than via paper copies as with Blair and Orchard. (Second Am. Compl. ¶ 38).

Plaintiff Wendy Loepp is a resident of Waco, Texas and was employed as an hourly customer service agent from August 2011 to April 2012 and August 2014 through December 2014. (Second Am. Compl. ¶¶ 17, 39). Loepp worked part time, 16 to 28 hours per week. (Second Am. Compl. ¶ 43). During both periods of employment, Loepp worked at the call center in Erie, Pennsylvania. (Second Am. Compl. ¶ 39). Loepp's hourly rate of pay was $8.00, plus commission for up-selling customers on travel insurance. (Second Am. Compl. ¶ 39). As a customer service agent, Loepp's job duties included: answering customer telephone calls for placing orders; up-selling travel insurance; answering questions about products; and assisting customers in finding substitute products for products no longer sold. (Second Am. Compl. ¶ 40). During her first employment period, Loepp answered telephone calls for Blair and Orchard and received policies and procedures referring to Blair and Orchard. (Second Am. Compl. ¶ 41). The building in which Loepp worked originally had the name Blair on it, but that was later changed to Orchard. (Second Am. Compl. ¶ 41). During her second employment period, Loepp was informed her employer was now Bluestem. (Second Am. Compl. ¶ 42). The name on the building changed to Bluestem. (Second Am. Compl. ¶ 42).

All three named Plaintiffs, on behalf of themselves and those similarly situated, assert that they "were regularly required to work a substantial amount of time off-the-clock as part of their jobs as Call Center Agents" and were never compensated for this time. (Second Am. Compl. ¶ 45). Plaintiffs were required, by their employer, to

> allot time to come into the office before their scheduled shifts to boot up
> their computers and launch and log into all necessary programs (including,
> but not limited to, Sharepoint and email) and check for any updates or any
> other necessary work related information from their supervisors or the
> corporate office.

(Second Am. Compl. ¶ 49). Following this boot-up procedure, Plaintiffs were then

"allowed to pull up Defendants' timing [sic] keeping system and clock in." (Second Am.

Compl. ¶ 49). This "pre-shift procedure prior to clocking in would take approximately ten

(10) minutes per shift." (Second Am. Compl. ¶ 49). Plaintiffs assert the pre-shift boot-up

procedure was "integral and indispensable to Defendants' business and integral and

indispensable to the performance of Call Center Agents' principal job duties." (Second

Am. Compl. ¶ 50). Plaintiffs assert Defendants refused to recognize the time spent

performing their pre-shift boot-up procedure as compensable. (Second Am. Compl.

¶¶ 51–58).

All three Plaintiffs assert, on behalf of themselves and those similarly situated, that

they were "apportioned customer phone calls until the technical end time of their shifts."

(Second Am. Compl. ¶ 59). As such, Plaintiffs were "not allowed to log out of

Defendants' phone systems or Defendants' computer systems until the technical end time

of their shifts." (Second Am. Compl. ¶ 59). Plaintiffs assert these "final calls" would

regularly last two to seven minutes. (Second Am. Compl. ¶ 61). If a customer call kept

Plaintiffs working seven minutes or less past their scheduled shifts, they would not be

compensated. (Second Am. Compl. ¶ 60). Plaintiffs assert that completing the "final

calls" was "integral and indispensable to Defendants' business and integral and

indispensable to the performance of Call Center Agents' principal job duties." (Second

Am. Compl. ¶ 62). Plaintiffs assert Defendants refused to recognize the time spent completing post-shift customer calls as compensable. (Second Am. Compl. ¶¶ 63–69).

Plaintiffs have also provided declarations from two persons who have submitted notices of their consent to sue prior to filing this motion.[1] First, Nicholas Zipperi is a resident of Erie, Pennsylvania who worked as a telephone sales agent at the Erie, Pennsylvania call center from February 2014 through June 11, 2016. (Decl. of Nicholas Zipperi ¶¶ 2–3, ECF No. 83). Zipperi answered telephone calls for Orchard and the building in which he worked had the name Blair on it. (Zipperi Decl. ¶ 4). Zipperi worked full-time. (Zipperi Decl. ¶ 6). At some time in 2015, the name on the building changed to Bluestem and Zipperi was informed he now worked for Bluestem. (Zipperi Decl. ¶ 4). Zipperi raises similar allegations as Plaintiffs. (Zipperi Decl. ¶¶ 7–10). Second, Rose Marie Stef is a resident of Erie, Pennsylvania who began working as a telephone sales agent at the Erie, Pennsylvania call center in September 2012. (Decl. of Rose Marie Stef ¶¶ 2–3, ECF No. 84). Stef answered telephone calls for Blair. (Stef Decl. ¶ 4). Until September 2015, Stef often worked 40 hours per week; since October 2015, Stef worked part time. (Stef. Decl. ¶ 6). At some time, Stef was informed she was now employed by Bluestem and recalls her company email address changed to a Bluestem

---

[1]     Prior to filing the motion, two other persons—Crystal Droney and Kia Blackstone—submitted notices of consent to sue. (ECF Nos. 51, 73). These documents do not have enough specificity for the Court to determine where Droney and Blackstone worked for Defendants within Pennsylvania.

    After filing their motion, but before the hearing on said motion, Plaintiffs submitted a notice of consent to sue from one person—Tammy Brown—who worked at a call center in Franklin, Pennsylvania. (ECF No. 99). After the motion came under advisement, two other persons—Beverly Myers and Mayra Fairbanks—submitted notices of consent to sue. (ECF Nos. 101, 102). Myers was employed at the Franklin, Pennsylvania call center and Fairbanks was employed at the Warren, Pennsylvania call center. The Court addresses these documents below.

email address, along with several other changes. (Stef Decl. ¶ 4). Stef raises similar allegations as Plaintiffs. (Stef Decl. ¶¶ 7–10).

Norris asserts that, in September 2014, she discussed uncompensated post-shift work with her supervisors. (Second Am. Compl. ¶ 85). Norris asserts that she discussed both pre-shift and post-shift work with her supervisors in April 2016, but was told to stop complaining and to not discuss the wage issue with other employees. (Second Am. Compl. ¶ 86). In May 2016, Norris emailed her supervisors' superiors about pre-shift and post-shift work, after which Norris's supervisors informed her it was unprofessional to address "higher-ups" about the wage issues via email. (Second Am. Compl. ¶ 87). Norris was again told to stop complaining about the wage issue and to consider finding another job. (Second Am. Compl. ¶ 87). Norris was terminated on June 21, 2016. (Second Am. Compl. ¶ 88).

## II.     PROCEDURAL BACKGROUND

Plaintiffs filed suit on November 18, 2016. (ECF No. 1). Before Defendants answered, Plaintiffs filed their First Amended Complaint. (ECF No. 14). And before Defendants had answered or otherwise responded to the First Amended Complaint, (*see* ECF No. 15) (stipulating for extension of time to respond), Plaintiffs moved for conditional class certification, (ECF No. 23). Defendants then moved for partial dismissal of Plaintiffs' First Amended Complaint. (ECF No. 36). This Court heard argument on Plaintiffs' conditional class certification motion on May 8, 2017. (ECF No. 52). Before this Court could issue a decision, however, Plaintiffs moved to amend their complaint an additional time. (ECF No. 57). This Court permitted Plaintiffs to amend their complaint,

but required Plaintiffs to move anew for conditional class certification. (ECF Nos. 74, 75). Thus, Plaintiffs filed their Second Amended Complaint on July 26, 2017, and Defendants answered on August 9, 2017, (ECF No. 98).

In their Second Amended Complaint, Plaintiffs assert five counts. First, Plaintiffs assert a violation of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201, *et seq.*, for failure to pay overtime wages. (Second Am. Compl. ¶¶ 89–106). Second, as a class action, Plaintiffs assert breach of contract. (Second Am. Compl. ¶¶ 107–120). Third, as a class action, Plaintiffs seek quasi-contractual remedies for unjust enrichment. (Second Am. Compl. ¶¶ 121–130). Fourth, as a Pennsylvania class action, Plaintiffs assert violations of the Pennsylvania Minimum Wage Act of 1968, 43 PA. STAT. AND CONS. STAT. §§ 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law, 43 PA. STAT. AND CONS. STAT. §§ 260.1, *et seq.* (Second Am. Compl. ¶¶ 131–140). And fifth, Plaintiff Norris asserts violation of FLSA, 29 U.S.C. § 215(a)(3), for retaliation. (Second Am. Compl. ¶¶ 141–145).

Now, Plaintiffs move afresh for conditional class certification—again moving before Defendants responded to the Second Amended Complaint. (ECF No. 77). Plaintiffs ask this Court to conditionally certify a collective action for unpaid wages pursuant to FLSA, 29 U.S.C. § 216(b), for telephone sales agents and customer service agents employed by Bluestem and Blair at call centers in Pennsylvania any time in the

last three years who were not paid for pre-shift and post-shift work. (ECF No. 77).[2]

Defendants oppose. The Court heard arguments from the parties and the motion is now

ripe for decision.[3]

## III.   ANALYSIS

### A.  Legal Standard

The FLSA authorizes employees to bring a collective action against employers to

recover unpaid overtime. 29 U.S.C. § 216(b). "Unlike a Rule 23 class action, under the

FLSA, no employee shall be a party to a collective action unless he gives consent in

writing to become such a party and such consent is filed in the court in which such action

is brought." *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014)

(quotation omitted); *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 939 (D. Minn.

2009). "Courts have discretion, in 'appropriate cases,' to facilitate the opt-in process by

conditionally certifying a class and authorizing court-supervised notice to potential opt-in

plaintiffs." *Chin*, 57 F. Supp. 3d at 1082; *Saleen*, 649 F. Supp. 2d at 939.

---

[2] Plaintiffs' counsel also asks to be appointed interim class counsel. This is a motion for conditional class certification under the FLSA—Count 1 of Plaintiffs' Second Amended Complaint—which does not relate to the separate class actions claims—Counts 2, 3, and 4 of Plaintiffs' Second Amended Complaint. Thus, the request is not properly before the Court.

[3] Additionally, the Court notes that the parties have yet to prepare a Rule 26(f) report or complete a pretrial conference after Defendants' filed their answer to the Second Amended Complaint. (*See* ECF No. 98). Rather, the agglomeration of motions to date has taken the forefront of the parties' efforts to date and this litigation has not advanced in any way other than the procedural history detailed above. With the ruling contained herein, the Court expects the parties to be well-prepared to move forward in an expeditious manner.

"To proceed with a collective action, plaintiffs must demonstrate that they are similarly situated to the proposed FLSA class." *Chin*, 57 F. Supp. 3d at 1082. In making this determination, the Court performs a two-step process:

> First, the court determines whether the class should be conditionally certified for notification and discovery purposes. At this stage, the plaintiffs need only establish a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan. In the second stage, which occurs after discovery is completed, the court conducts an inquiry into several factors, including the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that appear to be individual to each plaintiff, and other fairness and procedural considerations.

*Burch v. Qwest Communications Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (quotation omitted). "Determination of class status at the notice stage is granted liberally because the court has minimal evidence for analyzing the class." *Chin*, 57 F. Supp. 3d at 1082. The Court need only "determine whether Plaintiffs have come forward with evidence establishing a colorable basis that the putative class members are the victims of a single decision, policy, or plan." *Burch*, 500 F. Supp. 2d at 1186 (quotation omitted); *Chin*, 57 F. Supp. 3d at 1082; *Saleen*, 649 F. Supp. 2d at 939. At this stage, courts "usually rely on the pleadings and any affidavits submitted by the plaintiff to determine whether to grant conditional certification." *Chin*, 57 F. Supp. 3d at 1082–83. The Court, however, makes no "credibility determinations or findings of fact with respect to contrary evidence presented by the parties . . . ." *Burch*, 500 F. Supp. 2d at 1186; *Chin*, 57 F. Supp. 3d at 1083.

**B.  Whether Defendants' Employees Are Similarly Situated**

**1.  No Evidence Concerning Erie and Warren Call Centers**

Through their briefing and argument at the hearing, Plaintiffs seek a conditional class that covers all of Defendants' call centers in Pennsylvania. These call centers are located in Erie, Warren, and Franklin, Pennsylvania. Plaintiffs have provided declarations only from persons working at the Erie, Pennsylvania call center—Norris, Michalak, Loepp, Zipperi, and Stef—whether as telephone sales agents or customer service agents. At the hearing, Plaintiffs asserted that should their conditional class not be granted covering all three call centers in Pennsylvania, they will be forced to file one or two companion lawsuits, hindering judicial efficiency.

After filing their motion and after Defendants filed their opposition to said motion, but before the hearing on the motion, Plaintiffs filed a notice of consent to sue from Tammy Brown, who worked at a call center in Franklin, Pennsylvania. (ECF No. 99-1). Brown's declaration only indicates that she is aware of Plaintiffs' suit concerning pre-shift and post-shift work and, using boilerplate language similar to that found in all the consents to sue filed thus far, Brown was "employed as a Telephone Sales Agents [sic], Customer Service Agents [sic], or other job title performing similar job duties at any time in the last three years at the Franklin, Pennsylvania location." (ECF No. 99-1 ¶ 3).

Two further consents to sue were submitted after the motion was argued and taken under advisement. Both use the same boilerplate language that the signatories were "employed as a Telephone Sales Agents [sic], Customer Service Agents [sic], or other job title performing similar job duties at any time in the last three years . . ." (ECF Nos.

101-1 ¶ 3, 102-1 ¶ 3). Beverly Myers asserts she was employed at the Franklin, Pennsylvania location. (ECF No. 101-1 ¶ 3). Mayra Fairbanks asserts she was employed at the Warren, Pennsylvania call center. (ECF No. 102-1 ¶ 3).

To reiterate, these three consents to sue only provide the Court this information: that Brown, Myers, and Fairbanks are aware of this lawsuit and were employed at call centers in Franklin and Warren, Pennsylvania. These consents to sue do not make any affirmative allegation whatsoever that Brown, Myers, or Fairbanks were uncompensated for pre-shift or post-shift work. While Plaintiffs would have the Court infer that Brown, Myers, and Fairbanks' willingness to join this suit by submitting consent to sue forms signals that they were uncompensated for pre-shift and post-shift work, Plaintiffs have failed to provide sufficient support or allegations—even for inferential purposes—that any employee at the Franklin or Warren call center went uncompensated. Moreover, Plaintiffs' Second Amended Complaint does not differentiate between Defendants' Pennsylvania call centers, instead lumping all the entities together as one. Without more, the Court cannot extrapolate the alleged harms suffered at the Erie call center to Defendants' other Pennsylvania call centers. While Plaintiffs assert they will be forced to initiate additional lawsuits to capture these alleged plaintiffs, the Court cannot, in the name of possible judicial efficiency, conditionally certify a theoretical class in hopes that discovery encounters evidence that renders the class a reality. As such, this Court concludes Plaintiffs have not come forward with sufficient support or allegations establishing a colorable basis for a claim relating to the Warren or Franklin, Pennsylvania

call centers operated by Defendants. These facilities are thus excluded from the conditional class Plaintiffs seek.[4]

## 2.  Erie Call Center Employees Are Similarly Situated

Turning to the Erie, Pennsylvania call center, Plaintiffs assert that customer service agents and telephone sales agents are similarly situated because both subsets of employees were subjected to uncompensated pre-shift and post-shift work. Defendants assert that the job duties of customer service agents and telephone sales agents differ, precluding any finding that the two are similarly situated. The Court disagrees. The work performed by customer service agents and telephone sales agents is similar enough to permit joinder for conditional class purposes.

Here, both customer service agents and telephone sales agents have similar, if not identical, pre-shift duties. Each subset of employee is required to log in to their computer, boot up any programs needed to complete their job, and clock in. (Norris Decl. ¶ 7 (programs included Sharepoint, email, and Skype); Decl. of Sally Michalak ¶ 7, ECF No. 81 (logging into computer and order screen; open Defendants' website and catalog, Sharepoint, Pipkins, and Kronos); Decl. of Wendy Loepp ¶ 7, ECF No. 82; Zipperi Decl.

---

[4] The Court is well aware that, should Plaintiffs file additional lawsuits and then seek to consolidate them with this case, significant delays may result. Moreover, the process of initiating said additional lawsuits and seeking conditional class certification thereof means those potential plaintiffs' statute of limitations period continues to run. Such delays and loss of time could have been readily prevented had Plaintiffs engaged in some discovery in this case prior to seeking conditional class certification. Rather, Plaintiffs opted to move forward solely on the declarations of employees from a single call center with nothing more than bare assertions that other call centers shared similar practices and procedures, along with the consents to sue referenced above. Lacking sufficient support or allegations establishing a colorable basis for claims concerning the Warren and Franklin call centers, the Court cannot, without disregarding the fundamental jurisprudence of collective actions, escape this inefficient path forward presented by Plaintiffs.

¶ 7 (log into computer, Sharepoint, Kronos); Stef Decl. ¶ 5 (log into computer, check emails, Sharepoint, Kronos)). This process can range in time to complete from five to 15 minutes. (Norris Decl. ¶ 7 (took approximately 10 minutes to boot programs); Michalak Decl. ¶ 7 (approximately 8 to 10 minutes); Loepp Decl. ¶ 7 (approximately 10 minutes); Zipperi Decl. ¶ 7 (approximately 15 minutes); Stef Decl. ¶ 7 (approximately 5 to 10 minutes)). The variations in the on-the-job duties between the two classes of employees are distinctions without a difference. Customer sales agents take calls from customers to resolve orders they placed. (Michalak Decl. ¶ 5;Loepp Decl. ¶ 5). Telephone sales agents take calls from customers to place orders. (Norris Decl. ¶ 5; Zipperi Decl. ¶ 5; Stef Decl. ¶ 7). Then, as the workday finishes, some telephone calls with customers will not finish until after an employee's shift ends. (Norris Decl. ¶ 8; Michalak Decl. ¶ 8;Loepp Decl. ¶ 8; Zipperi Decl. ¶ 8; Stef Decl. ¶ 8). It is irrelevant, for purposes of this lawsuit, what these employees discussed with Defendants' customers while on the telephone. The similarity in pre-shift and post-shift work, regardless of whether an employee is a telephone sales agent or a customer service agent, shows Plaintiffs and their proposed class at the Erie call center are similarly situated for conditional class certification purposes.

### 3. Erie Call Center Employees Share a Common Injury Related to Pre-Shift Work

As to whether the two classes of employees at the Erie call center were subject to a common injury from a common policy, the Court concludes they were for conditional class certification purposes. First, both customer service agents and telephone sales

agents were required to be ready to field customer telephone calls at the start of their shifts. (Norris Decl. ¶ 7; Michalak Decl. ¶ 7; Loepp Decl. ¶ 7; Zipperi Decl. ¶ 7; Stef Decl. ¶ 7). To field such calls, employees were required to have certain programs running on their computer. (Norris Decl. ¶ 7; Michalak Decl. ¶ 7; Loepp Decl. ¶ 7; Zipperi Decl. ¶ 7; Stef Decl. ¶ 7). These programs were similar, if not identical, whether the employee worked as a customer service agent or telephone sales agent. (Norris Decl. ¶ 7; Michalak Decl. ¶ 7; Loepp Decl. ¶ 7; Zipperi Decl. ¶ 7; Stef Decl. ¶ 7). Booting up these programs takes time. (Norris Decl. ¶ 7; Michalak Decl. ¶ 7; Loepp Decl. ¶ 7; Zipperi Decl. ¶ 7; Stef Decl. ¶ 7). Defendants provided for a one to three minute grace period from the start of an employee's shift to log into the timekeeping system. (Decl. of Andrew Murphy, ECF No. 97, Ex. F at ¶ 9 (three minute requirement to log into timekeeping system), Ex. H at ¶ 9 (one minute requirement), Ex. T at ¶ 8 (one minute requirement); *see also* Michalak Decl. ¶ 7). Defendants assert they train all employees to log into the timekeeping system before any other program. (*E.g.*, Murphy Decl., Ex. J at ¶ 11, Ex. D at ¶ 8). Such a policy, however, contradicts the policy that employees be ready to field telephone calls immediately at the start of their scheduled shift.

Defendants point the Court to Blair's official policy which requires employees to record all their hours worked, including overtime. (Murphy Decl., Ex. U). "The existence of a written policy dictating overtime pay is one factor weighing against conditional certification." *Burch*, 500 F. Supp. 2d at 1188. Despite official policy, Defendants' own declarations describe an inherent non-uniformity in employee training. Customer service agents and telephone sales agents receive training from local personnel, "*sometimes* by

senior or experienced Sales or Service Agents." (Murphy Decl., Ex. C at ¶ 13 (emphasis added)). Indeed, this training could be provided by peer customer service agents or telephone sales agents. (Murphy Decl., Ex. J at ¶¶ 10–12). Peer trainers are provided discretion to operate the training as they see fit, interweaving personal stories as to the application of Blair's policies. (Murphy Decl., Ex. J at ¶ 12). Further complicating enforcement of Blair's official policy is the fact that teams of 10 to 15 employees are managed by a supervisor who exercises primary control over coaching and discipline concerning compliance with timekeeping requirements. (Murphy Decl., Ex. C at ¶ 13, Ex. J at ¶ 8, Ex. R at ¶ 8). Thus, while Blair may have an official policy that complies with FLSA, at this stage in the proceeding, Plaintiffs have sufficiently shown common injury as a result of FLSA noncompliance.

Defendants assert the case of *Andersen v. Wells Fargo Fin., Inc.*, 2012 WL 12871958, at *1 (S.D. Iowa Feb. 6, 2012), dictates denial of Plaintiffs' motion. In *Andersen*, the plaintiffs answered inbound telephone calls or placed outbound telephone calls for Wells Fargo and were "required to be prepared to answer phone calls at the beginning of their scheduled start time." *Id.* at *1. The plaintiffs asserted they were required to perform additional duties—review company emails, print and administer customer documents, and more—before and after their scheduled shifts "in order to enable them to accept more phone calls during their scheduled shift." *Id.* Plaintiffs asserted Wells Fargo knew of this uncompensated off-the-clock work, and even expected it. *Id.*

To support their allegations, the plaintiffs submitted eight affidavits from themselves and potential opt-in plaintiffs. *Id.* at *4. The affidavits all contained "identical or nearly identical terms" describing that Wells Fargo expected them "to be ready to handle telephone calls and service customers at the start of [their] scheduled shift. Therefore, [they] needed to log-in to [their] computers to open the software applications beforehand or [they] would not be ready to handle calls promptly at the start of [their] scheduled shift." *Id.* The affidavits also noted that the plaintiffs "customarily" worked before their shifts reading emails and printing customer documents, during meal and rest breaks doing similar work, and after shifts talking to clients or responding to emails. *Id.* This work was required, plaintiffs noted, due to performance goal expectations. *Id.*

The *Andersen* court noted none of the "affidavits, pleadings, or briefs state how the Plaintiffs knew that Wells Fargo expected them to work time additional to their scheduled shift without being paid for it, nor how Wells Fargo encouraged them to do so." *Id.* Merely by stating a defendant has a corporate practice "of not paying their employees for all the time they work" did not convince the *Andersen* court that a putative class could be defined. *Id.* The plaintiffs had not "alleged that any training program, any management employee of Wells Fargo, any of their direct supervisors, nor any fellow employee ever told them they must work overtime hours that should not be recorded on their time cards." *Id.* Moreover, the plaintiffs "provided no evidence that any training, any management employee of Wells Fargo, any of their direct supervisors, nor any fellow employee ever implied that the Plaintiffs and other Loan Officers were required to work overtime hours that they should not record on their time cards." *Id.* Nor could the

*Andersen* court infer that the performance goals imposed upon employees, either "expressly or impliedly . . . required Plaintiffs to work additional hours without compensation." *Id.* at *5.

Here, the affidavits submitted by Plaintiffs contain an identical phrase asserting that Defendants "required [them] and other Telephone Sales Agents and Customer Service Agents to be ready to begin taking calls by the technical start time of our shifts." (Norris Decl. ¶ 7; Michalak Decl. ¶ 7; Loepp Decl. ¶ 7; Zipperi Decl. ¶ 7; Stef Decl. ¶ 7). Unlike the plaintiffs in *Andersen*, however, Plaintiffs here assert that if they ever logged in past the one-minute grace period they "would be talked to by a supervisor about making sure to get in early to ensure we were able to take calls by the technical start time of our shift." (Michalak Decl. ¶ 7). Indeed, Zipperi asserts he was told to arrive "15 minutes before the technical start time of [his] shift" to boot up his computer. (Zipperi Decl. ¶ 7). Such assertions in Plaintiffs' declarations distinguish the instant case from *Andersen*, where the plaintiffs did not allege that any specific training program, any management employee of Defendants, any of their direct supervisors, nor any fellow employee ever told them they must work overtime hours that should not be recorded in the timekeeping system. Moreover, such assertions provide a colorable basis for this Court to conclude Plaintiffs have shown the Erie employees were victims of a common injury: uncompensated pre-shift work. *See Burch*, 500 F. Supp. 2d at 1188 ("The existence of a written policy dictating overtime pay is one factor weighing against conditional certification. However, at this early stage of litigation, the mere fact that [Defendant] has a written policy does not defeat Plaintiffs' motion in light of Plaintiffs'

countervailing evidence of a centralized policy to not pay overtime.") (internal citation omitted).

### 4. Plaintiffs Have Not Shown that the Erie Call Center Employees Share a Common Injury Related to Post-Shift Work

Turning to post-shift work, Plaintiffs assert post-shift customer telephone call work is almost guaranteed where Defendants required their employees to field telephone calls from customers through the last minute of their shifts. (Norris Decl. ¶ 8; Michalak Decl. ¶ 8; Loepp Decl. ¶ 8; Zipperi Decl. ¶ 8; Stef Decl. ¶ 8). Defendants, however, point the Court to Blair's official timekeeping and compensation policy which provides for rounding that ensures post-shift work is paid to the nearest quarter hour. (Murphy Decl., Ex. C at¶ 20).

FLSA regulations expressly permit rounding policy "provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b). Plaintiffs have not come forward with anything more than bare allegations that they "regularly" endured up to seven minutes of post-shift work that would be uncompensated due to Defendants' rounding policy, let alone any evidence that the rounding policy was improperly used. (*E.g.*, Norris Decl. ¶ 8). Such allegations are contradicted by specific examples provided by Defendants where Plaintiffs were paid for time not worked due to Defendants' rounding policy. (*E.g.*, Murphy Decl. Ex. V). Absent sufficient support or allegations that the rounding policy was improperly used to deprive Plaintiffs of

appropriate compensation, the Court will not include post-shift work in the conditional class.

### C. Plaintiffs Need to Revise the Proposed Notice

"[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* at 171. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Id.* at 172.

Here, Plaintiffs will need to modify their proposed notice in accordance with this Order. (*See* Decl. of Molly Nephew, Ex. 2, ECF No. 79 (Proposed Notice and Consent to Sue)). Within 7 days of this Order, the parties shall meet and confer to develop a Notice that complies with this Order. The Court orders the following changes and provides the following guidelines:

1. The caption of the Notice shall match the caption style used on this Order. Such a change removes the names of the judicial officers presiding over this case so as to remove any possible inference of judicial sponsorship.

2. The "Description of the Lawsuit" and "Eligibility to Participate in the Lawsuit" sections of the Notice, as well as the Consent to Sue form, shall be edited to

reference only the Erie, Pennsylvania call center and pre-shift work. No references shall be made to post-shift work or any other call center.

3. The Notice shall be distributed via U.S. mail and email. As such, there is no need to acquire potential opt-in plaintiffs' telephone numbers as requested by Plaintiffs. Given the dual mail and email delivery of the Notice, the Court concludes there is no need for Defendants to post the Notice at the Erie, Pennsylvania call center.

4. With regard to email notice, the subject line of the email will read: "Norris, et al. v. Bluestem Brands, Inc., et al., Case No. 16-cv-3954 (SRN/TNL) (D. Minn.)." The body of the email will read: "Please see the attached legal notice. Please do not respond to this Notice using your work email. Communications sent using your work email may not be considered confidential."

5. The opt-in period shall be open for 90 days. Plaintiffs are permitted to send a reminder postcard via mail and email 45 days into the opt-in period to potential opt-in plaintiffs that have not responded.

6. Potential opt-in plaintiffs are permitted to use an electronic signature through an online service. Defendants are permitted the opportunity to inspect the online service used prior to the opt-in period. The parties shall meet and confer to discuss appropriate timelines for such possible inspection.

Given the above rulings with respect to the Notice, within 14 days of this Order, Defendant shall provide to Plaintiffs' counsel a list of all persons who worked at the Erie call center as customer service agents and telephone sales agents at any time in the last three years. This list should include the following for each individual: (1) name;

(2) mailing address; and (3) last known email address (work email address if a current employee; personal email address if a former employee). Use of the list shall be limited to distributing the Notice via mail and email and the reminder postcard.

### D. Summary

Without any information concerning the Warren and Franklin, Pennsylvania call centers, the Court declines to include them in the conditional class. Nor does the Court include any post-shift work in the conditional class. As such, the Court certifies the following conditional class:

> All current and former Telephone Sales Agents and Customer Service Agents employed by Bluestem Brands, Inc. and/or Blair, LLC, at the call center in Erie, Pennsylvania, at any time in the last three years, who were not paid for off-the-clock work during their preliminary "boot-up" time.

The parties shall meet and confer to revise the Notice and Consent to Sue form in accordance with this Order within 7 days. Defendant shall provide the list of potential opt-in plaintiffs within 14 days. The notice and opt-in period will begin 14 days after delivery of the list of potential opt-in plaintiffs.

## IV.   CONCLUSION

Based on the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Renewed Motion for Conditional Certification and Notification to All Putative Class Members Under 29 U.S.C. § 216(b), (ECF No. 77), is **GRANTED IN PART and DENIED IN PART** as described herein.

2. The parties shall meet and confer to revise the Notice and Consent to Sue form in

accordance with this Order within 7 days.

3. Defendant shall provide the list of potential opt-in plaintiffs within 14 days.

4. The parties shall contact the chambers of the undersigned within 7 days to schedule a pretrial conference.

5. All prior consistent orders remain in full force and effect.

6. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.


Date: January 10, 2018                         *s/ Tony N. Leung*
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *Norris, et al. v. Bluestem Brands, Inc., et al.*
                                                Case No. 16-cv-3954 (SRN/TNL)