## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Tina Norris, Wendy Loepp, Sally Michalak, *individually and on behalf of all others similarly situated,* | File No. 16-cv-03954 (SRN/TNL) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Bluestem Brands, Inc., Blair, LLC, and Does 1–10, | |
| Defendants. | |

Jacob Robert Rusch, Molly E. Nephew, and David H. Grounds, Johnson Becker PLLC, 444 Cedar Street, Suite 1800, St. Paul, MN 55101, for Plaintiffs.

Andrew B. Murphy, Faegre Baker Daniels LLP, 90 S. 7th St. Suite 2200, Minneapolis, MN 55402; Samantha M. Rollins, Faegre Baker Daniels LLP, 801 Grand Avenue, 33rd Floor, Des Moines, IA 50309, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Appeal/Objection ("Objection") [Doc. No. 105] filed by Plaintiffs Tina Norris, Wendy Loepp, and Sally Michalak (collectively, "Plaintiffs") to Magistrate Judge Tony Leung's Order issued on January 10, 2018 ("January 10 Order" or "Order") [Doc. No. 103]. In the Order, Magistrate Judge Leung granted in part and denied in part Plaintiffs' Renewed Motion for Conditional Certification and Notification to All Putative Class Members Under 29 U.S.C. § 216(b) ("Plaintiffs' Motion") [Doc. No. 77]. After conducting a *de novo* review of all the files, records, and proceedings

herein, this Court overrules in part and sustains in part Plaintiffs' Objection to the magistrate judge's January 10 Order.

## I.    BACKGROUND

The magistrate judge's Order thoroughly and accurately sets forth the background and procedural history of this case, so this Court recites here only the facts necessary to contextualize and rule on Plaintiffs' Objection. Pursuant to the Fair Labor Standards Act ("FLSA"), 19 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act of 1986 ("PMWA"), 43 Pa. Stat. § 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Stat. § 260.1, *et seq.*, Plaintiffs filed this class and collective action on behalf of themselves and other similarly-situated current and/or former Telephone Sales Agents, Customer Service Agents, or other call center employees (all collectively, "Call Center Agents" or "CCAs") who perform similar job duties for Defendants. (Second Am. Compl. ("SAC") [Doc. No. 86] ¶ 1.) As the underlying basis of their claims, Plaintiffs allege that they "were regularly required to work a substantial amount of time off-the-clock as part of their jobs" as CCAs and "were never compensated for this time." (*Id.* ¶ 45.) Plaintiffs seek to recover allegedly unpaid overtime compensation and other wages. (*Id.* ¶ 8.)

### A.    Defendants' Business

Defendant Bluestem Brands, Inc. ("Bluestem") is a Delaware corporation headquartered in Minnesota. (*Id.* ¶ 18.) Bluestem is "the parent to 13 fast-growing eCommerce retail brands," including Defendant Blair, LLC ("Blair"). (*Id.*) Blair is a

Delaware limited liability company headquartered in Warren, Pennsylvania, and has call centers in Warren and Erie, Pennsylvania. (*Id.* ¶ 20.)[1]

Defendants employ CCAs at their various call centers. These employees work either full-time or part-time. (*Id.* ¶ 5.) Defendants' CCAs are generally tasked with answering the phones and providing customer service. (*Id.* ¶ 3.) Their duties include taking orders, selling products, and answering customer inquiries. (*Id.*) Accomplishing these duties requires that the CCAs use Defendants' telephones, computers, and associated computer programs. (*Id.* ¶ 48.)

### B.  The Named Plaintiffs and Their Allegations

The named Plaintiffs are each former hourly-paid CCAs who were employed by Defendants.  Norris resides in Erie, Pennsylvania, and was employed by Defendants as an hourly Telephone Sales Agent between July of 2013 and June of 2016. (*Id.* ¶¶ 15, 30.) Norris worked at Defendants' Erie call center. (*Id.*) As a Telephone Sales Agent, Norris answered customer calls and placed orders for Blair-brand products, as well as products from other retailers associated with Bluestem. (*Id.* ¶ 31.) She was also responsible for "up-selling" products and programs, answering questions about the products, and assisting customers with product substitutions. (*Id.*) Throughout her employment with Defendants, Norris regularly worked 40 hours per workweek, but she occasionally worked in excess of 40 hours per week. (*Id.* ¶ 44.)

---

[1] The Second Amended Complaint ("SAC") does not affirmatively allege that Defendants have a call center in Franklin, Pennsylvania. In their Memorandum in Support of their Motion, Plaintiffs state, however, that they are "aware of a (now closed) call center in Franklin, Pennsylvania that employed individuals who may be eligible to opt in to the current action." (Pls.' Mem. [Doc. No. 87] at 3 n.2.)

Michalak similarly resides in Erie, and was employed by Defendants as an hourly Customer Service Agent from approximately August of 2006 to January of 2017. (*Id.* ¶¶ 16, 34.) Michalak also worked at the Erie call center. (*Id.* ¶ 34.) Much like Norris, Michalak placed orders, helped customers exchange defective products, and generally assisted customers with questions about products. (*Id.* ¶ 35.) Throughout her employment with Defendants, Michalak regularly worked 40 hours per workweek, but occasionally worked in excess of 40 hours per week. (*Id.* ¶ 44.)

Finally, Loepp resides in Waco, Texas, and was employed by Defendants as an hourly Customer Service Agent from approximately August of 2011 to April of 2012 and again from August of 2014 through the end of December of 2014. (*Id.* ¶ 17.) She also worked at the Erie call center. (*Id.* ¶ 39.) As a Customer Service Agent, Loepp was tasked with answering customer calls and placing orders for various products, as well as "up-selling travel insurance, answering questions about the products," and generally "assist[ing] customers with questions about products no longer sold and helping them find similar substitute products." (*Id.* ¶ 40.) Throughout her employment with Defendants, Loepp regularly worked 16 to 28 hours per workweek. (*Id.* ¶ 43.) She never worked more than 40 hours per week. (*Id.*)

Plaintiffs allege that throughout their employment with Defendants, they were "regularly required to work a substantial amount of time off-the-clock as part of their jobs . . . [but] were never compensated for this time." (*Id.* ¶ 45.) They allege that they and other similarly-situated individuals "were subject to Defendants' policy and practice of employing them to work pre-shift and post-shift off-the-clock time without compensation." (*Id.* ¶ 5.)

4

Specifically, with regard to pre-shift work, Plaintiffs allege that Defendants required them to "allot time to come into the office before their scheduled shifts to boot up their computers and launch and log into all necessary programs (including, but not limited to, Sharepoint and email) and check for any updates or any other necessary work related information from their supervisors or the corporate office." (*Id.* ¶ 49.) Plaintiffs contend that it was not until they completed this "boot up procedure," which took approximately ten minutes per shift, that they were finally "allowed to pull up Defendants' timing keeping [sic] system and clock in." (*Id.*) Plaintiffs further allege that if they "clocked in before their technical start time of their shifts, Defendants refused to recognize pre-shift time as compensable." (*Id.* ¶ 51.)

With respect to post-shift work, Plaintiffs state that they would "receive final customer calls at, or very near, the technical end time of their shifts," and that "[t]hey would then have to follow through the call to completion, regardless of how long the call lasted." (*Id.* ¶ 60.) Plaintiffs allege that if their final calls kept them "seven minutes or less past their scheduled shifts, Defendants would not recognize this post-shift time as compensable." (*Id.*) It was only if "Plaintiffs performed post-shift work for eight minutes or more past their shifts' technical end times" that Defendants would recognize Plaintiffs' post-shift work as compensable. (*Id.* at 22, ¶ 63.)[2] Thus, according to Plaintiffs, they "performed approximately 10 to 35 minutes of postliminary call completion work per workweek" that went uncompensated. (*Id.* ¶ 61.) In all, Plaintiffs contend that Defendants' pre-shift and post-shift work "polic[ies] resulted in Plaintiffs and other similarly situated former and/or

---

[2] The SAC uses paragraphs 62–70 twice, so this Court cites to page numbers as well when citing to those paragraphs.

current Call Center Agents not being paid for all hours worked, including overtime premiums, in violation of the FLSA, the PMWA, the PWPCL, contract law and quasi-contract law." (*Id.* ¶ 5.)

Plaintiffs' SAC asserts five Counts.  Count I asserts a violation of the FLSA for failure to pay overtime wages. (*Id.* ¶¶ 89–106.) Count II alleges breach of contract, and is asserted as a class action claim. (*Id.* ¶¶ 107–20.) This Count alleges that "[b]y failing to pay Plaintiffs and the Class for the 'boot-up' and 'call completion' time, Defendants breached their contract with Plaintiffs and the Class to pay their hourly rate for each hour worked." (*Id.* ¶ 116.) Count III is a claim for unjust enrichment, and is again asserted as a class action claim. (*Id.*  ¶¶ 121–30.) Count IV, in turn, alleges class action violations of the PMWA and the PWPCL. (*Id.* ¶¶ 131–40.) Finally, Count V is a FLSA retaliation claim under 29 U.S.C. § 215(a)(3) brought on behalf of Norris alone, and alleges that Defendants unlawfully terminated Norris on June 21, 2016 because she "complained to Defendants, on numerous occasions, about illegal pay practices." (*Id.* ¶ 144; *see id.* ¶¶ 141–45.)

Relevant here, the SAC also makes collective action allegations in support of Plaintiffs' collective FLSA claim.  Plaintiffs assert that they bring this action under 29 U.S.C. § 216(b) individually and on behalf of the following class:

> All current and former Telephone Sales Agents, Customer Service Agents, or other job titles performing similar job duties employed by Bluestem Brands, Inc. and/or Blair, LLC ("Defendants"), at Defendants' call centers in Pennsylvania, at any time in the last three years, who were not paid for off-the-clock work during their preliminary "boot-up" time and postliminary "call completion" time.

(*Id.* at 24–25, ¶ 67.) Plaintiffs contend that the above class is comprised of employees who are "similarly situated" because

(a) they have been or are employed in the same or similar positions;

(b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendants' policies of not paying their employees overtime at a rate of one-and-one-half times their regular rate for all compensable time worked);

(c) their claims are based upon the same factual and legal theories; and

(d) the employment relationship between Defendants and every putative Class member is exactly the same and differs only by name, location, and rate of pay.

(*Id.* at 25, ¶ 69.)

With respect to Defendants' "practices, policy, or plan," Plaintiffs make the following allegations. Plaintiffs contend that "[u]pon information and belief, Defendants have corporate policies and practices of evading overtime pay for their hourly workers for all compensable time worked." (*Id.* ¶ 103.) They further state that "[a]ll similarly situated employees are victims of a uniform and company-wide policies [sic] which operate to compensate employees at a rate less than the federally mandated overtime wage rate." (*Id.* ¶ 105.) Further, Plaintiffs state that "on information and belief, Defendants do not allow their employees to clock in to begin being compensated until after the pre-shift procedures are complete." (*Id.* ¶ 113.) Moreover, Plaintiffs allege, "Defendants did not compensate their employees for time still clocked in and performing work if the work performed is less than 8 minutes past the technical end of their shifts." (*Id.* ¶ 124.)

### C.  Plaintiffs' Motion and the Magistrate Judge's January 10 Order

On July 26, 2017, Plaintiffs filed their Motion, seeking certification of the following class:

All current and former Telephone Sales Agents, Customer Service Agents, or other job titles performing similar job duties employed by Bluestem Brands, Inc. and/or Blair, LLC ("Defendants"), at Defendants' call centers in Pennsylvania, at any time in the last three years, who were not paid for off-the clock work during their preliminary "boot-up" time and postliminary "call completion" time.

(Pls.' Mot. at 1.) On the same date, Plaintiffs filed declarations from five current or former employees at the Erie call center—three from the named Plaintiffs and two from plaintiffs who have opted into the lawsuit. (*See* Tina Norris Decl. [Doc. No. 80] ¶ 3; Sally Michalak Decl. [Doc. No. 81] ¶ 3; Wendy Loepp Decl. [Doc. No. 82] ¶ 3; Nicholas Zipperi [Doc. No. 83] ¶ 3; Rose Marie Stef Decl. [Doc. No. 84] ¶ 3.) These declarations all contain allegations that the declarants regularly worked a significant amount of time off-the-clock both before and after their shifts—time that allegedly went uncompensated. (*See, e.g.*, Norris Decl. ¶¶ 7–10.) For example, Norris states that "Defendant required us to arrive to work early to boot up our computers and launch and log into all necessary programs (including, but not limited to, Sharepoint, email, and Skype);" a process that would take Norris approximately 10 minutes per shift and after which she was finally allowed to clock in. (*Id.* ¶ 7.) Similarly, Michalak states that "Defendants required [her] and other Customer Service Agents and Telephone Sales Agents to be ready to begin taking calls by the technical start time of [their] shifts." (Michalak Decl. ¶ 7.) She further states that "[i]f [they] were even one minute past [their] technical start times . . . in beginning to take calls, [they] would be talked to by a supervisor about making sure to get in early to ensure [they] were able to take calls by the technical start time of [their] shift." (*Id.*) However, according to Michalak, "[t]he last thing [they] were allowed to do was pull up Kronos, wait for that program to load and then log in." (*Id.*)

With respect to post-shift work, the declarations state that CCAs were required to receive final customer calls until the technical end time of their shifts, which meant that they

would have to "follow through the call to completion," even if that meant ending the call after the technical end time of their shifts. (Norris Decl. ¶ 8.) However, Plaintiffs allege, "[i]f the final call lasted seven minutes or less" past their shifts' technical end time, "Defendants would not recognize this time as compensable and [would] remove it from [their] hours worked for the day." (*Id.*)

After Plaintiffs filed their Motion, but prior to the Motion hearing before the magistrate judge, Plaintiffs filed a "consent-to-sue"—or "opt-in" form—from Tammy Brown, an individual who asserts that Defendants employed her at their Franklin call center. (Tammy Brown Consent to Sue [Doc. No. 99-1].) After the Motion hearing but before the magistrate judge issued the January 10 Order, two more individuals, one from the Franklin call center and one from the Warren call center, filed similar consent-to-sue forms. (Beverly Myers Consent to Sue [Doc. No. 101-1] (Franklin call center); Mayra Fairbanks Consent to Sue [Doc. No. 102-1] (Warren call center).)[3]

On January 10, 2018, the magistrate judge granted in part and denied in part Plaintiffs' Motion. The magistrate judge found that conditional certification was warranted, but only of a more limited class than the one Plaintiffs proposed.  The magistrate judge found that for purposes of conditional certification, Plaintiffs had shown only that:  (1) employees at the Erie call center—but not at the Franklin or Warren call centers—were similarly situated; and (b) that these employees were subject to a common injury from a

---

[3] After the magistrate judge issued the January 10 Order, numerous consent-to-sue forms have been filed from people associated with the Erie call center. Moreover, at least one consent-to-sue form has been filed since then from an individual who worked at the Warren facility. (Scott Muzzy Consent to Sue [Doc. No. 132-1].)

common policy with respect to *pre*-shift—but not *post*-shift—work. (Jan. 10 Order at 11–22.)

At the outset, and relying heavily on the five declarations Plaintiffs filed, the magistrate judge found that Plaintiffs had indeed established that the Erie employees were similarly situated because of the tasks they performed and because of the similarity in the pre-shift and post-shift work that they alleged they were required to do. (*Id.* at 14–16.) The magistrate judge, however, found that Plaintiffs had presented no evidence to justify including employees from the Franklin or Warren call centers in the conditionally-certified class. (*Id.* at 11–13.) The magistrate judge highlighted that Plaintiffs provided declarations only from employees of the Erie call center, and that no employee from Franklin or Warren had provided a similar declaration. (*Id.*) The magistrate judge noted that although Plaintiffs filed opt-in forms from two Franklin employees and one Warren employee, these forms were insufficient to carry Plaintiffs' burden of "establishing a colorable basis" for any claim relating to those two facilities. (*Id.* at 12.)

Specifically, the magistrate judge found that the consent-to-sue forms "do not make any affirmative allegation whatsoever" that the opt-in plaintiffs "were uncompensated for pre-shift or post-shift work," but merely state that the opt-in plaintiffs are aware of the lawsuit and are or were employed at the Franklin and Warren call centers. (*Id.*) The magistrate judge stressed that "Plaintiffs have failed to provide sufficient support or allegations—even for inferential purposes—that any employee at the Franklin or Warren call center went uncompensated." (*Id.*)  The magistrate judge stated that at the Motion hearing, "Plaintiffs asserted that should their conditional class not be granted covering all

three call centers in Pennsylvania, they will be forced to file one or two companion lawsuits, hindering judicial efficiency." (*Id.* at 11.) The magistrate judge acknowledged that "should Plaintiffs file additional lawsuits and then seek to consolidate them with this case, significant delays may result." (*Id.* at 13 n. 4.) However, the magistrate judge concluded, "[l]acking sufficient support or allegations establishing a colorable basis for claims concerning the Warren and Franklin call centers, . . . [he could not], without disregarding the fundamental jurisprudence of collective actions, escape this inefficient path forward presented by Plaintiffs." (*Id.*)

With respect to a "common injury," the magistrate judge found that Plaintiffs' allegations—supported by the five declarations—"provide a colorable basis . . . to conclude [that] Plaintiffs have shown [that] the Erie employees were victims of a common injury: uncompensated pre-shift work." (*Id.* at 18.) Although the magistrate judge acknowledged Defendants' official policy requiring employees to "record all their hours worked, including overtime," he concluded that "Defendants' own declarations describe an inherent non-uniformity in employee training," which could in turn result in FLSA violations. (*Id.* at 15.) Thus, the magistrate judge concluded, "while Blair may have an official policy that complies with FLSA, at this stage in the proceeding, Plaintiffs have sufficiently shown common injury as a result of FLSA noncompliance." (*Id.* at 16.)

With respect to post-shift work, the magistrate judge found that Plaintiffs had not shown that the Erie call center employees shared a common injury related to post-shift work. (*Id.* at 19–20.) The magistrate judge pointed to an official policy of Blair's, "which provides for rounding that ensures post-shift work is paid to the nearest quarter hour." (*Id.* at

11

19.) Noting that the FLSA expressly permits some rounding policies, and that Defendants had offered evidence that Plaintiffs were paid for time not worked pursuant to Blair's rounding policy, the magistrate judge concluded that "[a]bsent sufficient support or allegations that the rounding policy was improperly used to deprive Plaintiffs of appropriate compensation," post-shift work would not be included in the conditional class. (*Id.* at 19–20.) As such, the magistrate judge certified the following class:

> All current and former Telephone Sales Agents and Customer Service Agents employed by Bluestem Brands, Inc. and/or Blair, LLC, at the call center in Erie, Pennsylvania, at any time in the last three years, who were not paid for off-the-clock work during their preliminary "boot-up" time.

(*Id.* at 22.)

On January 24, 2018, Plaintiffs filed their Objection to the magistrate judge's Order. Plaintiffs do not object to the magistrate judge's conclusion declining to include post-shift work in the conditionally-certified class. They do, however, object to portions of the Order declining to include the Warren and Franklin call centers in the conditionally-certified class. (Obj. at 1.)

## II.   DISCUSSION

### A.  Standard of Review

There is some disagreement between the parties about whether this Court should review the magistrate judge's January 10 Order under a *de novo* or clear error standard of review. Plaintiffs argue that the "clearly erroneous" standard applies, (*id.* at 4–5), whereas Defendants contend that while some courts have adopted such deferential standard of review, "this Court has held that its review of a magistrate judge's ruling

regarding a conditional certification is *de novo*." (Defs.' Resp. to Pls.' Obj. [Doc. No. 114] at 7.)

A magistrate judge's order on various pretrial, non-dispositive matters is reviewed under a "clearly erroneous or contrary to law" standard of review.   28 U.S.C. § 636(b)(1)(A). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chase v. Comm'r of Internal Revenue*, 926 F.2d 737, 740 (8th Cir. 1991) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a magistrate judge's proposed findings of fact and recommendations for the disposition of certain matters, such as motions "to dismiss or to permit maintenance of a class action," are reviewed by the district judge *de novo*.   28 U.S.C. § 636(b)(1)(A)–(C); *accord* D. Minn. LR 72.2(b). The Eighth Circuit has not spoken on the issue of whether deciding motions for *conditional* certification under the FLSA falls within a magistrate judge's authority, and there is some inconsistency amongst the district courts about which standard of review a district court judge must apply to a magistrate judge's conditional certification order or report and recommendation. *See Lindsay v. Clear Wireless LLC*, Civ. No. 13-834 (DSD/FLN), 2014 WL 813875, at *2–3 (D. Minn. Mar. 3, 2014) (collecting district court cases). In this case, however, this Court need not affirmatively address the parties differing positions, as the Court reaches the same conclusion under either standard.

### B.  Analysis

Under the FLSA, covered employers must pay non-exempt employees who work over 40 hours in a given workweek an overtime rate of one and a half times the employee's regular rate of pay for all hours worked exceeding 40. 29 U.S.C. § 207(a). The FLSA authorizes employees to bring a collective action against employers to recover unpaid overtime. *Id.* § 216(b). Unlike a Federal Rule of Civil Procedure 23 class action, under the FLSA, no employee can be a party to a collective action unless "he gives consent in writing to become such a party," or, in other words, opts into the lawsuit. *Jennings v. Cellco P'ship,* Civ. No. 12-00293 (SRN/TNL), 2012 WL 2568146, at *3 (D. Minn. July 2, 2012) (quoting *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005)). "Courts have discretion, in 'appropriate cases,' to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs." *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 939 (D. Minn. 2009) (quoting *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989)).

To proceed with a collective action, Plaintiffs must demonstrate that they are "similarly situated" to their proposed FLSA class. *Brennan v. Qwest Commc'ns Int'l, Inc.*, Civ. No. 07-2024 (ADM/JSM), 2008 WL 819773, at *3 (D. Minn. Mar. 25, 2008). Determining whether Plaintiffs are similarly situated to the proposed class requires a two-step inquiry. *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (citations and quotations omitted). First, the court determines whether the class should be conditionally certified for notification and discovery purposes. *Id.* In this "notice" stage, Plaintiffs need only establish a colorable basis for their claim that the

14

putative class members were the victims of a single decision, policy, or plan. *Id.* Determination of class status at the notice stage is granted liberally because the court has minimal evidence for analyzing the class. *Ray v. Motel 6 Operating, Ltd. P'ship,* No. 3–95–828 (RHK), 1996 WL 938231, at *2 (D. Minn. Mar. 18, 1996). Second, after discovery and typically following a motion to decertify, courts conduct a more searching inquiry to determine if the class should be maintained through trial. *Keef v. M.A. Mortenson Co.*, Civ. No. 07-3915 (JMR/FLN), 2008 WL 3166302, at *2 (D. Minn. Aug. 4, 2008). "If a class is decertified, opt-in class members are dismissed without prejudice, and the case proceeds only in the putative class representatives' individual capacities." *Id.* (citation omitted).

Since the parties here have not completed discovery, this case is at the first step of the two-step process. Thus, the relevant inquiry is only whether Plaintiffs have come forward with evidence establishing a colorable basis for their claim that the putative class members are victims of a single FLSA-violating decision, policy, or plan. *Frank v. Gold'n Plump Poultry, Inc.*, Civ. No. 04-1018 (JNE/RLE), 2005 WL 2240336, at *2 (D. Minn. Sept. 14, 2005). At this stage, courts usually rely on the pleadings and any affidavits submitted to determine whether to grant conditional certification. *See Parker v. Rowland Express, Inc.,* 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). However, the Court "does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Brennan,* 2008 WL 819773, at *3 (citation omitted).

In their Objection, Plaintiffs argue that the magistrate judge's January 10 Order was clearly erroneous and contrary to law because it impermissibly: (1) "implied a heightened evidentiary standard" by suggesting that Plaintiffs could have avoided partial denial of their Motion had they engaged in some discovery before seeking conditional class certification, (Obj. at 7); (2) implied that a declaration from an employee at each call center is necessarily required before employees from those call centers can be included in the conditionally-certified class, (*id.* at 8–11); and (3) disregarded "critical" record evidence, (*id.* at 11–13).

This Court disagrees. Even after conducting a *de novo* review, although subject to the caveat explained below, this Court agrees with the magistrate judge that Plaintiffs' Motion should be denied in part for the reasons articulated in the January 10 Order. As this Court has stated on several occasions, to succeed in obtaining conditional certification of an FLSA class, Plaintiffs must come forward with at least some "*evidence establishing a colorable basis*" for their claim that the putative class members are victims of a single FLSA-violating decision, policy, or plan. *See, e.g.*, *Shoots v. iQor Holdings US Inc.*, Civ. No. 15-563 (SRN/SER), 2015 WL 6150862, at *16 (D. Minn. Oct. 19, 2015) (emphasis added); *Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564, 577 (D. Minn. 2014); *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014). Although this is a lenient standard, Plaintiffs' burden is "not invisible." *Brooks v. A Rainaldi Plumbing, Inc.*, No. 6:06-cv-631-Orl-31DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006). Indeed, conditional certification "is by no means automatic." *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (citation omitted).

16

Here, this Court agrees with the magistrate judge that the specific opt-in forms filed by the Warren and Franklin opt-in plaintiffs do not provide sufficient information from which this Court could infer that these employees are similarly situated to the Erie employees. To be sure, these forms explicitly state that the opt-in plaintiffs certify that they know of their right to join the instant lawsuit, and that the lawsuit is filed on behalf of individuals "who worked off-the-clock work during their preliminary 'boot up' time and/or postliminary 'call completion' time and were not paid overtime premiums." (Tammy Brown Consent to Sue at 1.) The Court acknowledges that it is *plausible* to infer that plaintiffs who decide to opt-in do so because they presumably are or were subject to the same allegedly unlawful compensation practices that are asserted in the lawsuit. Nevertheless, the fact remains that these opt-in forms do not contain any factual information tending to show that the opt-in plaintiffs were also uncompensated for "off-the-clock" work *under circumstances similar* to those of the named Plaintiffs. Relying on these specific opt-in forms, standing alone, to conditionally certify a class would come dangerously close to eviscerating the requirement that plaintiffs offer at least some *evidence*, however preliminary, to support their contention that members of the putative class are similarly situated. *See Masson v. Ecolab, Inc.*, No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005) (stating that plaintiffs must "mak[e] a modest *factual* showing sufficient to demonstrate" a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees]" (alterations in original) (emphasis added) (citations omitted)). To be clear, this Court is not requiring Plaintiffs to conduct full-blown discovery at this stage, and does not read

17

the magistrate judge's January 10 Order as imposing an impermissible discovery requirement. Rather, what is required is some *affirmative* evidence that Warren and Franklin employees were required to perform "off-the-clock" work that went uncompensated under the same or substantially similar policy as the employees at the Erie call center.

Particularly important to this Court's conclusion is the fact that Plaintiffs are not alleging that a specific *company-wide* policy of Defendants violates the FLSA. Rather, what Plaintiffs seem to allege is that the supervisors at Erie followed an unwritten policy that required CCAs to work off the clock before their shifts began.[4] (*See, e.g.*, Norris Decl. ¶¶ 7–9.) Whether a plaintiff alleges that an official company-wide policy rather than, for instance, an unwritten policy, violates the FLSA ultimately bears on the type and quantity of evidence that may be sufficient to obtain conditional certification. The case of *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-Civ, 2006 WL 2290512 (S.D. Fla. May 17, 2006), illustrates this point. In *Guerra*, the plaintiff was an hourly-paid laborer who alleged that the defendant's policy of reducing the regular rate of pay during laborers' last week of employment resulted in an "improper computation of overtime compensation." *Id.* at *1. With support of only two affidavits—his own and one from a fellow laborer who worked in a different city, (*id.* at *2)—the plaintiff sought conditional certification of a class of former laborers in Florida "who, after terminating their employment with the [d]efendant, had their rate of pay reduced to minimum wage

---

[4] And as the magistrate judge correctly found, although Defendants contend that their company-wide policy requires that employees log all time worked, Defendants' own affidavits establish a variability of training based on *who* is providing that training.

during their final week," *id.* at \*1. The defendant objected to conditional certification, specifically complaining about the "lack of limits" of the proposed class, including with respect to "job title, job duty, or geographic location." *Id.* at \*3. The court rejected the defendant's arguments, highlighting as critically important that the plaintiff was alleging an improper "*company-wide* pay *policy* with the uniform result that the final pay of all laborers is lower than it should [be]." *Id.* (emphasis added). In rejecting the defendant's argument regarding "lack of limits," the court highlighted that the defendant had not denied that laborers were "similarly affected on a company-wide or state-wide basis," and further reasoned that

> the [d]efendant's objections would be more relevant had the [p]laintiff alleged a more discrete or particularized pay violation, for example, if supervisors or local managers had informally docked employees' pay in contravention of an otherwise lawful company policy. Or, if differences in working conditions or job types had an impact on the way overtime pay is computed.

*Id.* The court thus concluded that certification of a state-wide class was warranted because even with just two affidavits from laborers from two locations, the plaintiff had "raise[d] the minimum allegations sufficient to make a rudimentary showing of commonality amongst laborers . . . ." *Id.*

This Court highlights *Guerra* for the important point that the *nature* of a plaintiff's allegations will necessarily bear on the type of proof necessary to obtain conditional certification. Plaintiff makes much of the fact that courts, including this one, "routinely conditionally certify a class comprising multiple locations without requiring a declaration from each of the employer's location." (Obj. at 9.) But Plaintiffs gloss over the nature of the alleged FLSA violation in those cases, and the fact that declarations from different

locations—even if not from *every* location—were in fact often offered in support of the motions to conditionally certify a class.

In sum, this Court agrees with the magistrate judge that Plaintiffs' Motion should be denied in part. However, this Court's conclusion is subject to an important caveat: although this Court anticipates, in light of the present record, that Plaintiffs are unlikely to ultimately present evidence of a company-wide policy sufficient to warrant inclusion of the Warren and Franklin CCAs in the conditionally-certified class, this Court will give Plaintiffs an opportunity to present such evidence. This Court is not convinced that filing different lawsuits and moving to consolidate the actions is the best path forward. Plaintiffs will therefore be permitted to file a renewed motion for conditional certification in the event that they obtain and file at least *some* evidence to sustain their burden of establishing that employees at the Franklin and Warren call centers were subject to the same unwritten policy as that alleged by the Erie employees. Accordingly, Plaintiffs' Objection is overruled in part and sustained in part.  The Objection is sustained *only* to permit Plaintiffs to file a motion to add the Warren and Franklin call centers to the conditionally-certified class, *provided* that their new motion addresses the evidentiary deficiencies described in this Order. In all other respects, Plaintiffs' Objection is overruled.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Appeal/Objection [Doc. No. 105] to Magistrate Judge Leung's Order of January 10, 2018 [Doc. No. 103] is **OVERRULED in part and SUSTAINED in part**; and

2. Within 30 days, Plaintiffs may file a renewed motion to add the Warren and Franklin call centers to the conditionally-certified class, if they so choose, if and only if they present sufficient evidence to sustain their burden of proof.

Dated: April 26, 2018                        s/Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge