UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tina Norris, Sally Michalak, and Wendy Loepp, individually and on behalf of all others similarly situated, | Case No. 16-cv-3954 (SRN/TNL) |
| Plaintiffs, | |
| v. | **ORDER** |
| Bluestem Brands, Inc., Blair, LLC, and Does 1–10, | |
| Defendants. | |

Jacob R. Rusch and Molly Nephew, Johnson Becker PLLC, 444 Cedar Street, Suite 1800, Saint Paul MN 55101 (for Plaintiffs); and

Andrew B. Murphy, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis MN 55402, and Samantha M. Rollins, Faegre Baker Daniels LLP, 801 Grand Avenue, 33rd Floor, Des Moines IA 50309 (for Defendants).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff's Renewed Motion for Conditional Certification and Notification to All Putative Class Members Under 29 U.S.C. § 216(b). (ECF No. 152). For the reasons discussed below, the motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The full factual background and procedural history of this lawsuit is set forth more fully in previous orders. (First Conditional Certification Order, ECF No. 103, *adopted in part by* ECF No. 148, 2018 WL 1972473 (hereinafter "Apr. 26, 2018 Order")). The Court draws facts from those previous orders.

Defendant Bluestem Brands, Inc. (hereinafter "Bluestem") is a Delaware corporation headquartered in Eden Prairie, Minnesota. (Second Am. Compl. ¶¶ 3, 18, ECF No. 86). Bluestem is a parent company to 13 e-commerce retail brands, including Appleseed's and Blair, LLC (hereinafter "Blair"). (Second Am. Compl. ¶¶ 2, 4, 18, 20). Bluestem employs individuals at call centers as telephone customer support and salespersons. (Second Am. Compl. ¶ 3). Defendant Blair is a Delaware limited liability company headquartered in Warren, Pennsylvania. (Second Am. Compl. ¶¶ 4, 20). Blair operates call centers in Warren and Erie, Pennsylvania. (Second Am. Compl. ¶¶ 4, 20). Blair does business as Appleseed's and Orchard Brands (hereinafter "Orchard"). (Second Am. Compl. ¶ 20).

Named Plaintiffs, Tina Norris, Sally Michalak, and Wendy Loepp, all worked for Defendants' call center in Erie, Pennsylvania. (Second Am. Compl. ¶¶ 15–17). All three named Plaintiffs, on behalf of themselves and those similarly situated, assert that they "were regularly required to work a substantial amount of time off-the-clock as part of their jobs as Call Center Agents" and were never compensated for this time. (Second Am. Compl. ¶ 45). Plaintiffs were required by their employer to

> allot time to come into the office before their scheduled shifts to boot up their computers and launch and log into all necessary programs (including, but not limited to, Sharepoint and email) and check for any updates or any other necessary work related information from their supervisors or the corporate office.

(Second Am. Compl. ¶ 49). Following this boot-up procedure, Plaintiffs were then "allowed to pull up Defendants' timing [sic] keeping system and clock in." (Second Am. Compl. ¶ 49). This "pre-shift procedure prior to clocking in would take approximately ten

2

(10) minutes per shift." (Second Am. Compl. ¶ 49). Plaintiffs assert the pre-shift boot-up procedure was "integral and indispensable to Defendants' business and integral and indispensable to the performance of Call Center Agents' principal job duties." (Second Am. Compl. ¶ 50). Plaintiffs assert Defendants refused to recognize the time spent performing their pre-shift boot-up procedure as compensable. (Second Am. Compl. ¶¶ 51–58).

Plaintiffs filed their Second Amended Complaint on July 26, 2017, (ECF No. 86), and moved contemporaneously for conditional class certification, (ECF No. 77). Plaintiffs asked this Court to conditionally certify a collective action for unpaid wages pursuant to Section 216(b) of the Fair Labor Standards Act (hereinafter "FLSA"), for telephone sales agents and customer service agents employed by Bluestem and Blair at call centers in Pennsylvania any time in the last three years who were not paid for pre-shift and post-shift work. In connection with their motion, Plaintiffs provided declarations from the three Named Plaintiffs as well as declarations from two persons who had already submitted notices of their consent to sue. (*See* First Conditional Certification Order, at 2–7). These five declarations all involved persons who worked at the Erie, Pennsylvania call center. (*See* First Conditional Certification Order, at 2–7; Apr. 26, 2018 Order, at 8).

This Court granted in part and denied in part Plaintiffs' conditional class certification motion, finding that "conditional certification was warranted, but only of a more limited class than the one Plaintiffs proposed." (Apr. 26, 2018 Order, at 9). This Court found, "for purposes of conditional certification, Plaintiffs had shown only that:

(1) employees at the Erie call center—but not at the Franklin or Warren call centers—were similarly situated; and ([2]) that these employees were subject to a common injury from a common policy with respect to pre-shift—but not post-shift—work." (Apr. 26, 2018 Order, at 9 (citing First Conditional Certification Order, at 11–22)). This Court found that Plaintiffs had presented no evidence to justify including employees from the Franklin or Warren call centers in the conditionally-certified class. (First Conditional Certification Order, at 11–13).

Plaintiffs objected to and appealed the First Conditional Certification Order on the grounds that it was error to decline inclusion of the Warren and Franklin call centers in the conditionally-certified class. (*See* Apr. 26, 2018 Order, at 12). The District Court upheld the First Conditional Certification Order's analysis and conclusions and noted, "in light of the present record, that Plaintiffs are unlikely to ultimately present evidence of a company-wide policy sufficient to warrant inclusion of the Warren and Franklin [call centers] in the conditionally-certified class," but permitted Plaintiffs an opportunity to present such evidence. (Apr. 26, 2018 Order, at 20). Thus, the District Court "permitted [Plaintiffs] to file a renewed motion for conditional certification in the event that they obtain and file at least *some* evidence to sustain their burden of establishing that employees at the Franklin and Warren call centers were subject to the same unwritten policy as that alleged by the Erie employees." (Apr. 26, 2018 Order, at 20) (emphasis in original).

Plaintiffs have now filed their renewed conditional certification motion, seeking to add employees of the Warren and Franklin call centers to the already conditionally-

4

certified class of employees at the Erie, Pennsylvania call center. In conjunction with this third attempt to seek conditional certification, Plaintiffs submitted four declarations, discussed below.

## II. ANALYSIS

### A. Legal Standard

The FLSA authorizes employees to bring a collective action against employers to recover unpaid overtime. 29 U.S.C. § 216(b). "Unlike a Rule 23 class action, under the FLSA, no employee shall be a party to a collective action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014) (quotation omitted); *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 939 (D. Minn. 2009). "Courts have discretion, in 'appropriate cases,' to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs." *Chin*, 57 F. Supp. 3d at 1082; *Saleen*, 649 F. Supp. 2d at 939.

"To proceed with a collective action, plaintiffs must demonstrate that they are similarly situated to the proposed FLSA class." *Chin*, 57 F. Supp. 3d at 1082. In making this determination, the Court performs a two-step process:

> First, the court determines whether the class should be conditionally certified for notification and discovery purposes. At this stage, the plaintiffs need only establish a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan. In the second stage, which occurs after discovery is completed, the court conducts an inquiry into several factors, including the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that appear to be individual to each plaintiff, and other fairness and procedural considerations.

5

*Burch v. Qwest Communications Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (quotation omitted). "Determination of class status at the notice stage is granted liberally because the court has minimal evidence for analyzing the class." *Chin*, 57 F. Supp. 3d at 1082. The Court need only "determine whether Plaintiffs have come forward with evidence establishing a colorable basis that the putative class members are the victims of a single decision, policy, or plan." *Burch*, 500 F. Supp. 2d at 1186 (quotation omitted); *Chin*, 57 F. Supp. 3d at 1082; *Saleen*, 649 F. Supp. 2d at 939. At this stage, courts "usually rely on the pleadings and any affidavits submitted by the plaintiff to determine whether to grant conditional certification." *Chin*, 57 F. Supp. 3d at 1082–83. The Court, however, makes no "credibility determinations or findings of fact with respect to contrary evidence presented by the parties . . . ." *Burch*, 500 F. Supp. 2d at 1186; *Chin*, 57 F. Supp. 3d at 1083.

### B. The Franklin Call Center Declaration

Plaintiffs submitted a single declaration from a Franklin call center employee. Tammy Brown worked as a customer service representative at the Franklin, Pennsylvania call center starting in 2004. (Decl. of Tammy Brown ¶ 3, ECF No. 159). As a customer service agent, Brown's job duties included taking customer service calls. (Brown Decl. ¶ 5). Brown regularly worked at least 39 hours per week. (Brown Decl. ¶ 6). Brown asserts Defendants required her and other customer service agents

> to be ready to begin taking calls by the technical start times of our shifts. I was verbally told by management to arrive early, so I was ready to take a call the minute my shift starts. Because of this it was generally understood by employees at the call center that it was the policy that we were expected

> to be ready to take calls when our shift started. Defendants required us to arrive to work early to boot up our computers which included, but was not limited, [sic] to logging onto the computer with our usernames and passwords and logging into several different programs. This would take approximately 10 to 15 minutes per shift.

(Brown Decl. ¶ 7). Brown asserts "all Customer Service Agents and Telephone Sales Agents [at the call center in Franklin] were subjected to Defendants' same policies regarding pre-shift hours worked and Defendants' same compensation policies that resulted in us not being paid [for overtime]." (Brown Decl. ¶ 9).

Brown is unsure who originally employed her, but she answered telephone calls for Blair and received catalogs and employee handbooks referring to Blair and Orchard. (Brown Decl. ¶ 4). At some point in her employment, Brown was informed her new employer was Bluestem. (Brown Decl. ¶ 4). Specifically, Brown declares as follows:

> I am unsure of the legal name of the company that initially employed me when I first began working for Defendants, but I know that I was answering phone calls regarding Blair Brands. Employee handbooks, policies and catalogs with the Blair Brands and Orchard Brand logos were available at desks in the call center. At a date unknown to me at this time, I was informed that my employer was now Bluestem Brands, Inc. The employee handbooks at our desks were updated with the Bluestem Brands logos.

(Brown Decl. ¶ 4). Defendants indicate Brown's last date of employment was June 26, 2015, (Decl. of Cassandra Sienecki ¶ 3, ECF No. 167-1), before Bluestem purchased Blair in July 2015, (ECF No. 166, at 15). Thus, Defendants assert, Brown's claim that she experienced a transition in employers and witnessed an update in employee handbooks from Blair/Orchard to Bluestem is an impossibility.

As noted above, because of the limited evidence at this stage of the proceeding, courts "usually rely on the pleadings and any affidavits submitted by the plaintiff to

7

determine whether to grant conditional certification." *Chin*, 57 F. Supp. 3d at 1082–83. Normally, courts make no "credibility determinations or findings of fact with respect to contrary evidence presented by the parties . . . ." *Burch*, 500 F. Supp. 2d at 1186; *Chin*, 57 F. Supp. 3d at 1083. This standard does not mean, however, that courts completely ignore evidence submitted by a defendant resisting conditional certification. *Saleen*, 649 F. Supp. 2d at 942; *see McDermott v. Fed. Sav. Bank*, 2018 WL 1865916, at *5 (E.D.N.Y. Apr. 18, 2018) ("While it is true that the Court does not decide the merits at this stage, the Court is not required to turn a blind eye to evidence in the record that is relevant to the conditional certification determination.").

Here, Brown's declaration serves as the lone change in factual circumstances from those considered in the First Conditional Certification Order and Apr. 26, 2018 Order. Whether the inclusion of the portion of Paragraph 4 in Brown's declaration detailing her change in employers from Blair/Orchard to Bluestem—which mirrors Paragraph 4 in the other declarations Plaintiffs submitted—was a "result of sloppy lawyering" as Defendants posit, (ECF No. 166, at 15–16), or borne from a more sinister motive, its inclusion is impossible to ignore given that Brown's declaration serves as the sole evidentiary basis for Plaintiffs' request to conditionally certify the entire Franklin facility. While credibility determinations as to conflicting evidence are ordinarily not made at this stage in the proceedings, what ineluctably confronts this Court is not consideration of merely contrary evidence. *Burch*, 500 F. Supp. 2d at 1186; *Chin*, 57 F. Supp. 3d at 1083. This Court cannot accept Brown's declaration as credible where it contains a blatant error at best or a substantial falsehood at worse. *See Cox v. Entm't U.S.A. of Cleveland, Inc.*, 2014 WL

4302535, at *2 (N.D. Ohio Aug. 29, 2014) ("[W]hile not dispositive of whether conditional certification is warranted, when coupled with the fact that Plaintiff presented what has proven through limited discovery to be a Declaration rife with false statements of which she has no direct knowledge, the Court cannot help but be concerned as to Plaintiff's motive in filing this case."); *see also Kelsey v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1068 n.2 (D. Ariz. 2014) (declining to consider declarations that had been rejected by another court). Simply put, this Court may not close its eyes to statements that are blatant errors or indisputably false, and such erroneous inclusions or falsehoods cannot serve to form the basis of a colorable claim.

Given such errors or falsehoods in Brown's declaration, this Court cannot rely on it to determine whether to grant conditional certification. *Chin*, 57 F. Supp. 3d at 1082–83. In the absence of Brown's declaration, this Court has before it no evidence that supports Plaintiffs' allegations concerning the Franklin facility. Just as this Court concluded in the First Conditional Certification Order on the same evidentiary showing, (First Conditional Certification Order, at 11–13), this Court again must conclude that Plaintiffs have not come forward with sufficient support or allegations establishing a colorable basis for a claim relating to the Franklin, Pennsylvania call center operated by Defendants.

### C. The Warren Call Center

#### 1. The Warren Employee Declarations

Plaintiffs submitted three declarations from employees of the Warren call center. As with Brown's declaration concerning the Franklin facility, these three declarations are

the only change in the factual circumstances from those considered in the First Conditional Certification Order and Apr. 26, 2018 Order.

Kia Blackstone worked as a telephone sales representative at the Warren, Pennsylvania call center starting in July 2015. (Decl. of Kia Blackstone ¶ 3, ECF No. 156). As a telephone sales agent, Blackstone's job duties included answering customer telephone calls for placing orders and taking customer service calls. (Blackstone Decl. ¶ 5). For a two-month period in April and May 2016 and during holiday seasons, Blackstone worked at least 40 hours per week. (Blackstone Decl. ¶ 6). Blackstone asserts Defendants required her and other customer service agents and telephone sales agents

> to be ready to begin taking calls by the technical start times of our shifts. Defendants required us to arrive to work early to boot up our computers which included, but was not limited, [sic] to logging onto the computer with our usernames and passwords and logging into several different programs. When I was first hired, I received a hard copy notice stating that I was expected to have my computer booted up and to be logged into all of the programs so that I could take calls immediately when my shift started. This would take approximately 15 - 20 minutes per shift.
> On several occasions, the program I used to clock in for my shift experienced technical issues. I was instructed to begin taking calls while management corrected the issues. Many times, I was not paid for the time I spent taking calls while management dealt with the technical issues (i.e., the first two hours of those shifts).

(Blackstone Decl. ¶¶ 7–8). Blackstone asserts "all Customer Service Agents and Telephone Sales Agents [at the call center in Warren] were subjected to Defendants' same policies regarding pre-shift hours worked and Defendants' same compensation policies that resulted in us not being paid [for overtime]." (Blackstone Decl. ¶ 10). Blackstone is unsure who originally employed her, but she answered telephone calls for Blair and Orchard and received catalogs referring to Blair and Orchard. (Blackstone Decl.

10

¶ 4). At some point in her employment, Blackstone was informed her new employer was Bluestem. (Blackstone Decl. ¶ 4).

Mayra Fairbanks worked as a customer service representative at the Warren, Pennsylvania call center starting in September 2014. (Decl. of Mayra Fairbanks ¶ 3, ECF No. 157). As a customer service agent, Fairbanks' job duties included taking customer service calls. (Fairbanks Decl. ¶ 5). Fairbanks regularly worked at least 40 hours per week. (Fairbanks Decl. ¶ 6). Fairbanks asserts Defendants required her and other customer service agents

> to be ready to begin taking calls by the technical start times of our shifts. Defendants required us to arrive to work early to boot up our computers which included, but was not limited, [sic] to logging onto the computer with our usernames and passwords and logging into several different programs. This would take approximately 10 to 15 minutes per shift if there were no technical issues with the programs.

(Fairbanks Decl. ¶ 7). Fairbanks is unsure who originally employed her, but she answered telephone calls for Orchard and received catalogs and employee handbooks referring to Orchard. (Fairbanks Decl. ¶ 4). At some point in her employment, Fairbanks was informed her new employer was Bluestem. (Fairbanks Decl. ¶ 4). Fairbanks asserts "all Customer Service Agents and Telephone Sales Agents [at the call center in Warren] were subjected to Defendants' same policies regarding pre-shift hours worked and Defendants' same compensation policies that resulted in us not being paid [for overtime]." (Fairbanks Decl. ¶ 9).

Scott Muzzy worked as a customer service representative at the Warren, Pennsylvania call center starting in June 2015. (Decl. of Scott Muzzy ¶ 3, ECF No. 158).

As a customer service agent, Muzzy's job duties included taking customer service calls. (Muzzy Decl. ¶ 5). Muzzy regularly worked at least 40 hours per week. (Muzzy Decl. ¶ 6). Muzzy asserts Defendants required him and other customer service agents

> to be ready to begin taking calls by the technical start times of our shifts. I recall reading "Updates" (in hardcopy form) a few occasions telling myself and other Customer Service Agents and Telephone Sales Agents to get in early, so we were ready to take a call the minute our shifts hit . . . Defendants required us to arrive to work early to boot up our computers which included, but was not limited, [sic] to logging onto the computer with our usernames and passwords and logging into several different programs. This would take approximately 10 to 15 minutes per shift if there were no technical issues with the programs.

(Muzzy Decl. ¶ 7). Muzzy is unsure who originally employed him, but he answered telephone calls for Blair and received catalogs and employee handbooks referring to Blair and Orchard. (Muzzy ¶ 4). At some point in his employment, Muzzy was informed his new employer was Bluestem. (Muzzy ¶ 4). Muzzy asserts "all Customer Service Agents and Telephone Sales Agents [at the call center in Warren] were subjected to Defendants' same policies regarding pre-shift hours worked and Defendants' same compensation policies that resulted in us not being paid [for overtime]." (Muzzy Decl. ¶ 9).

### 2. The Warren Call Center Employees Are Similarly Situated

Plaintiffs assert that customer service agents and telephone sales agents are similarly situated because both subsets of employees were subjected to uncompensated pre-shift work. Defendants asserted previously that the job duties of customer service agents and telephone sales agents differ, precluding any finding that the two are similarly situated. As discussed by the First Conditional Certification Order, this Court disagrees.

12

The work performed by customer service agents and telephone sales agents is similar enough to permit joinder for conditional class purposes.

Here, both customer service agents and telephone sales agents have similar, if not identical, pre-shift duties. Each subset of employee is required to log in to their computer and boot up any programs needed to complete their job. (Blackstone Decl. ¶ 7; Fairbanks Decl. ¶ 7; Muzzy Decl. ¶ 7). This process can range in time to complete from 10 to 20 minutes. (Blackstone Decl. ¶ 7 (15 to 20 minutes); Fairbanks Decl. ¶ 7 (10 to 15 minutes); Muzzy Decl. ¶ 7 (10 to 15 minutes)). Customer sales agents take calls from customers to resolve orders they placed. (Fairbanks Decl. ¶ 5; Muzzy Decl. ¶ 5). Telephone sales agents take calls from customers to place orders. (Blackstone Decl. ¶ 5). The variations between the two classes of employees are immaterial because what these employees discussed with Defendants' customers while on the telephone has no bearing on the employees' pre-shift duties. As this Court concluded in the First Conditional Certification Order, the similarity in pre-shift work, regardless of whether an employee is a telephone sales agent or a customer service agent, shows the proposed class members at the Warren call center are similarly situated for conditional class certification purposes.

### 3. Warren Call Center Employees Share a Common Injury

As to whether the two classes of employees at the Warren call center were subject to a common injury from a common policy, the Court concludes they were for conditional class certification purposes. First, both customer service agents and telephone sales agents were required to be ready to field customer telephone calls at the start of their shifts. (Blackstone Decl. ¶¶ 7–8; Fairbanks Decl. ¶ 7; Muzzy Decl. ¶ 7). To field

such calls, employees were required to have certain programs running on their computer. (Blackstone Decl. ¶¶ 7–8; Fairbanks Decl. ¶ 7; Muzzy Decl. ¶ 7). Booting up these programs takes time. (Blackstone Decl. ¶¶ 7–8; Fairbanks Decl. ¶ 7; Muzzy Decl. ¶ 7). As this Court concluded in the First Conditional Certification Order, such assertions provide a colorable basis for this Court to conclude Plaintiffs have shown that the Warren employees were victims of a common injury: uncompensated pre-shift work.

### D. Warren Employees and Erie Employees Do Not Share a Common Injury from a Common Policy

While this Court's analysis ended in the First Conditional Certification Order upon a finding that the Erie call center employees were similarly situated and shared a common injury, the analysis for the Warren call center employees does not end at the same junction. Plaintiffs already sought, and this Court granted, a conditionally-certified class comprised of:

> All current and former Telephone Sales Agents and Customer Service Agents employed by Bluestem Brands, Inc. and/or Blair, LLC, at the call center in Erie, Pennsylvania, at any time in the last three years, who were not paid for off-the-clock work during their preliminary "boot-up" time.

(First Conditional Certification Order, at 22). Plaintiffs do not pursue a second class to run parallel to the Erie class, but rather to add the Warren and Franklin employees to the already-existing class. Indeed, this is all that Plaintiffs may seek pursuant to the Apr. 26, 2018 Order, which permitted Plaintiffs a renewed attempt "to add the Warren and Franklin call centers to the conditionally-certified class" by sustaining "their burden of establishing that employees at the Franklin and Warren call centers were subject to the

14

same unwritten policy as that alleged by the Erie employees." (Apr. 26, 2018 Order, at 20).

The Erie employees and the Warren employees are similarly situated.[1] Regardless of work location, telephone sales agents and customer service agents working for Defendants had similar pre-shift duties: log into their computer and boot up programs necessary to perform their job duties. (Blackstone Decl. ¶ 7; Fairbanks Decl. ¶ 7; Muzzy Decl. ¶ 7; Decl. of Tina Norris ¶ 7, ECF No. 80; Decl. of Sally Michalak ¶ 7, ECF No. 81; Decl. of Wendy Loepp ¶ 7, ECF No. 82; Decl. of Nicholas Zipperi ¶ 7, ECF No. 83; Decl. of Rose Marie Stef ¶ 5, ECF No. 84). This process ranges from 5 to 20 minutes. (Blackstone Decl. ¶ 7 (15 to 20 minutes); Fairbanks Decl. ¶ 7 (10 to 15 minutes); Muzzy Decl. ¶ 7 (10 to 15 minutes); (Norris Decl. ¶ 7 (10 minutes); Michalak Decl. ¶ 7 (8 to 10 minutes); Loepp Decl. ¶ 7 (10 minutes); Zipperi Decl. ¶ 7 (15 minutes); Stef Decl. ¶ 7 (5 to 10 minutes)). The similarity in pre-shift work, regardless of whether an employee is a telephone sales agent or a customer service agent and whether the employee worked at the Erie or Warren call center, shows the conditionally-certified Erie class and the proposed Warren class are similarly situated for conditional class certification purposes.

What Plaintiffs cannot show, however, is that the harm suffered by the conditionally-certified Erie class and the proposed Warren class results from a common policy. As Plaintiffs argued, and the Court accepted, the Erie class was subjected to "an

---

[1] The addition of the Franklin facility fails for the evidentiary reasons stated above—that is, its blatant error or indisputably false statement cannot form the basis of a colorable claim—so this Court does not address it here.

15

unwritten policy" requiring off-the-clock pre-shift work. (Apr. 26, 2018 Order, at 18). With the Warren class, however, Plaintiffs have shifted their argument to a *written* policy. (Muzzy Decl. ¶ 7 (written policy); Blackstone Decl. ¶ 7 (written policy with occasional verbal enforcement); *see* Fairbanks Decl. ¶ 7 (only stating "Defendants required us to arrive to work early")). A *written* policy controlling the workforce at the Warren facility differentiates that class from the *unwritten* policy enforced upon the Erie class.

The Apr. 26, 2018 Order provides a narrow theory of liability which Plaintiffs may pursue: that the "Franklin and Warren call centers were subject to the *same unwritten policy* as that alleged by the Erie employees." (Apr. 26, 2018 Order, at 20) (emphasis added). By shifting their theory of liability from an unwritten policy to a written policy, Plaintiffs have sought to conditionally certify a class outside the scope permitted by the Court. Perhaps this is unsurprising given that all four declarations Plaintiffs submitted in support of their renewed conditional certification motion were completed prior to the issuance of the Apr. 26, 2018 Order. (Muzzy Decl. at 4 (signed Mar. 21, 2018); Fairbanks Decl., at 4 (signed Mar. 28, 2018); Blackstone Decl. (signed Apr. 6, 2018); Brown Decl., at 4 (signed Apr. 12, 2018)). It appears, based on these declarations submitted by Plaintiffs, that Plaintiffs did not "*obtain* and file" evidence to sustain their motion as directed by the Court, (Apr. 26, 2018 Order, at 20) (emphasis added), but instead relied on declarations they generated before the Apr. 26, 2018 Order even issued. It is not surprising then that these declarations would not comply with, or be responsive to, the Court's directives.

To look past this failure to comply with the Apr. 26, 2018 Order would not be "the best path forward." (Apr. 26, 2018 Order, at 20). Indeed, to ignore Plaintiffs' shift in theory of liability would be unfair to Defendants, who would be expected to defend against a moving target. The parties, Plaintiffs and Defendants alike, must have respect for the specifics of the Court's rulings. To permit litigants' disregard for directives of the Court, particularly when those directives are quite specific and narrow, invites the specter of endless serial litigation. In fact, this case is already suspect where Plaintiffs are now on their third conditional certification motion, second amended complaint, and further where the status of discovery remains in its infancy—if it even has begun—some fifteen months after the lawsuit was initiated. Thus, while it may appear a harsh result to reject Plaintiffs' attempt at conditional certification of the Warren call center, the Plaintiffs chose their litigation strategy and how to execute it. It would be difficult indeed for Plaintiffs now to claim surprise when the Apr. 26, 2018 Order specifically directed Plaintiffs to "obtain and file at least some evidence" to support their conditional certification motion.

As set forth above, Plaintiffs cannot show that the Warren employees were the victims of a single decision, policy, or plan, that is, the same unwritten policy as the Erie employees. Given that Plaintiffs have failed to show the Warren employees were subject to the same unwritten policy imposed upon the Erie employees, conditional certification of the Warren facility is improper. *See, e.g., Hart v. JPMorgan Chase Bank, N.A.*, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) (declining to conditionally certify proposed call center class involving pre-shift and post-shift work where the employees

asserted divergent violations); *Carlson v. Leprino Foods Co.*, 2006 WL 1851245, at *5 (W.D. Mich. June 30, 2006) (denying conditional certification where "a jury later seeking to ascertain whether there was an unlawful policy affecting the workplace would be confronted with nine work places, nine organization structures and more than nine policies, because the policies changed during the limitations period, and would be rightly confused in answering the simple question of whether 'the policy' was in compliance with FLSA").

### E. Summary

Without any reliable information concerning the Franklin, Pennsylvania call center, this Court again declines to include it in the conditional class. With respect to the Warren, Pennsylvania call center, Plaintiffs have failed to show a common injury from a common policy tying the Warren facility to the Erie facility. Absent a common policy between the Warren and Erie facilities, conditional class certification for the Warren facility remains inappropriate.[2]

---

[2] This Court does not reach Defendants' arguments that Plaintiffs have failed to demonstrate sufficient interest from potential opt-in plaintiffs at the Warren and Franklin facilities. (ECF No. 166, at 16–17). This Court does note, however, that Plaintiffs have demonstrated at least *some* interest given the several opt-in plaintiffs from the Warren facility. *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164–65 (D. Minn. 2007).

Nor does this Court reach Plaintiffs arguments concerning tolling of the statute of limitations for opt-in plaintiffs at the Warren and Franklin facilities. (ECF No. 154, at 13–15). This Court does, however, express doubt that equitable tolling would apply, *Pace v. DiGuglielmo*, 554 U.S. 408, 418 (2005) (equitable tolling requires diligence and extraordinary circumstances), particularly where this Court has already criticized the delays created by Plaintiffs to date, (First Conditional Certification Order, at 13 n.4; *see also* ECF No. 166, at 17–21).

Finally, this Court does not reach the parties' arguments concerning the proposed notice given that it has concluded no conditional certification is warranted.

## III. CONCLUSION

Based on the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Renewed Motion for Conditional Certification and Notification to All Putative Class Members Under 29 U.S.C. § 216(b), (ECF No. 152), is **DENIED**.

2. Pursuant to ECF No. 172, wherein this Court granted the parties' request to cancel the settlement conference pending this Order, the parties shall jointly contact the undersigned within 7 days to reschedule the settlement conference in this matter.

3. All prior consistent orders remain in full force and effect.

4. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel, and/or the party such counsel represents to any and all appropriate remedies, sanctions, and the like.

Date: August 28, 2018            *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Norris, et al. v. Bluestem Brands, Inc., et al.*
Case No. 16-cv-3954 (SRN/TNL)