UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Tina Norris, Sally Michalak, and Wendy Loepp, individually and on behalf of all others similarly situated, | File No. 16-cv-03954 (ECT/TNL) |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| Bluestem Brands, Inc.; Blair, LLC; and Does 1–10, | |
| Defendants. | |

---

After over two years of litigation in this Fair Labor Standards Act ("FLSA") case, the Parties seek to decertify the conditional class, dismiss the Opt-In Plaintiffs' claims without prejudice, and dismiss the Named Plaintiffs' claims with prejudice. The Parties initially presented these requests as a stipulation. ECF No. 179. In compliance with the Court's January 24, 2019 Order concluding that court approval of decertification and dismissal in FLSA matters "is at least advisable, and perhaps required, here," ECF No. 181 at 12, Defendants filed an unopposed motion explaining the grounds for decertification and dismissal, ECF No. 185. Although the Court erred in inferring from the Parties' stipulation that there had been a settlement (the Parties have since made clear there was no settlement), review of the requested decertification and dismissal is nonetheless required by law to ensure that they are fair and equitable, especially with respect to the Opt-In Plaintiffs. That review establishes clearly that decertification and dismissal are appropriate because

discovery has revealed that the class members are not "similarly situated" and the Named Plaintiffs' claims are not viable.

I[1]

A

Tina Norris, Sally Michalak, and Wendy Loepp (the "Named Plaintiffs") bring one collective-action claim under the FLSA for failure to pay overtime wages and bring three putative class-action claims pursuant to Fed. R. Civ. P. 23 for breach of contract, unjust enrichment, and violations of the Pennsylvania Minimum Wage Act of 1968. Second Am. Compl. ¶¶ 89–140 [ECF No. 86]. Plaintiff Norris also separately asserts a claim for retaliation under the FLSA. Id. ¶¶ 141–45.

Named Plaintiffs are three former employees of Defendants' call center in Erie, Pennsylvania; one was a full-time hourly telephone sales agent (Norris), and two were hourly customer-service agents (Michalak and Loepp) who worked full-time and part-time, respectively. Id. ¶¶ 15–17, 30, 34, 39, 43–44. They allege a modern-day donning-and-doffing routine in which they were unpaid for time spent booting up their computers, as well as completing "final calls" with customers that extended beyond the designated end time of their shifts. Id. ¶¶ 49–62. They allege that this unpaid pre-shift procedure took approximately ten minutes per shift, and that "final calls" would regularly last two to seven minutes. Id. ¶¶ 49–51, 59–62.

---

[1]   The history of this FLSA case is set forth fully in the Court's January 24, 2019 Order, but it will be recited again here for the benefit of the Opt-In Plaintiffs, who will receive or be given access to a copy of this Order when they are notified of decertification and the dismissal of their claims.

B

On July 26, 2017, the same day they filed their Second Amended Complaint, Plaintiffs moved for conditional class certification under the FLSA, relating exclusively to Count 1 for overtime wages. *See* Renewed Mot. to Certify Conditional Class [ECF No. 77]; Second Am. Compl.; Jan. 10, 2018 Order at 9 n.2 [ECF No. 103]. Plaintiffs sought to certify a conditional class covering all Defendants' call centers in Pennsylvania (in Erie, Franklin, and Warren), but the Court only granted certification as to the Erie location. *See id.* at 11–14 (concluding that, at least at the conditional-certification stage, "[t]he work performed by customer service agents and telephone sales agents is similar enough to permit joinder" and that the "employees at the Erie call center were subject to a common injury from a common policy," but that "Plaintiffs ha[d] failed to provide sufficient support or allegations . . . that any employee at the Franklin or Warren call center went uncompensated"). And although Plaintiffs alleged both pre- and post-shift work went uncompensated, the Court only certified a conditional class as to pre-shift work. *See id.* at 19–20 (declining to certify post-shift class because Defendants used an FLSA-compliant "rounding policy" to pay employees to the nearest quarter hour, and Plaintiffs did not come forward with "sufficient support or allegations that the rounding policy was improperly used to deprive Plaintiffs of appropriate compensation"). Specifically, Magistrate Judge Tony N. Leung certified the following class on January 10, 2018:

> All current and former Telephone Sales Agents and Customer Service Agents employed by Bluestem Brands, Inc. and/or Blair, LLC, at the call center in Erie, Pennsylvania, at any time in the last three years, who were not paid for off-the-clock work during their preliminary "boot-up" time.

*Id.* at 22.

3

Plaintiffs objected to that order. ECF No. 105 (objecting only to the exclusion of the Warren and Franklin call centers from the conditionally-certified class). Reviewing the matter de novo, District Judge Susan Richard Nelson agreed that there was an insufficient showing to justify inclusion of the two other Pennsylvania call centers in the conditionally-certified class. *See* Apr. 26, 2018 Mem. Op. and Order at 17 [ECF No. 148]. But Judge Nelson afforded Plaintiffs an opportunity "to file a renewed motion for conditional certification in the event that they obtain and file at least *some* evidence to sustain their burden of establishing that employees at the Franklin and Warren call centers were subject to the same unwritten policy as that alleged by the Erie employees." *Id.* at 20. Plaintiffs subsequently sought conditional certification to include those Franklin and Warren call center employees, ECF No. 152, but their motion was denied. *See* Aug. 28, 2018 Order at 15–16, 18–19 [ECF No. 173] ("Without any reliable information concerning the Franklin, Pennsylvania call center, this Court again declines to include it in the conditional class. With respect to the Warren, Pennsylvania call center, Plaintiffs have failed to show a common injury from a common [unwritten] policy tying the Warren facility to the Erie facility."). Accordingly, the contours of the conditionally-certified class remained unchanged.

As part of its conditional-class-certification order, the Court had directed the Parties to notify the members of the class via mail and email. *See* Jan. 10, 2018 Order at 21–23. In total, 107 individuals have opted into this litigation (the "Opt-in Plaintiffs"). *See* Rollins Decl. ¶ 2 [ECF No. 187]; *see also* ECF Nos. 108–09, 113, 115–24, 126–47, 149–51.

C

Since that time, the Parties have been conducting discovery. *See* Pretrial Scheduling Order at 1 [ECF No. 111]; Am. Pretrial Scheduling Order at 1 [ECF No. 177] (extending fact-discovery deadline to April 1, 2019). The Parties "agreed to participate in targeted discovery in advance of a settlement conference," which "included limited written discovery and the depositions of the three [N]amed Plaintiffs." Rollins Decl. ¶ 3 [ECF No. 187]. As the Defendants' unopposed motion for decertification and dismissal describes, "certain facts came to light" during the depositions of the three Named Plaintiffs that revealed "disparate work experiences" and "undermined the merits of the three Named Plaintiffs' claims." Mot. ¶ 3 [ECF No. 185].

In particular, the Named Plaintiffs' depositions were inconsistent with their previous sworn statements about being "required" to complete pre-shift work before clocking in. *See* Norris Decl. ¶ 7 [ECF No. 80]; Michalak Decl. ¶ 7 [ECF No. 81]; Loepp Decl. ¶ 7 [ECF No. 82]. Michalak testified that "[t]he company suggested you be there [early], but they didn't put it as a requirement." Rollins Decl. Ex. C ("Michalak Dep.") at 30:9–33:12, 46:19–50:21 [ECF No. 187-3]. She admitted that her declaration incorrectly stated that she was "required" to arrive at work early. Michalak Dep. at 129:16–130:13. Loepp similarly testified that it was not actually a requirement to arrive early at work, and that arriving early was just a way to get the "perks [of] being a good sales representative." Rollins Decl. Ex. B ("Loepp Dep.") at 103:15–104:17 [ECF No. 187-2]. Norris, too, testified that she did not remember any requirement that she could not clock in until she

5

completed this pre-shift work. Rollins Decl. Ex. A ("Norris Dep.") at 146:14–147:20 [ECF No. 187-1].

The depositions and limited document discovery also revealed the troubling fact that oftentimes the Named Plaintiffs were not even in the building at work when they claimed to be performing unpaid pre-shift work. *See* Mem. in Supp. at 6 [ECF No. 186]. This was inconsistent with previous sworn statements that the Named Plaintiffs "regularly" performed upwards of fifteen minutes of pre-shift work. *See* Norris Decl. ¶ 7; Michalak Decl. ¶ 7; Loepp Decl. ¶ 7. For example, on May 3, 2016, when her shift was scheduled to begin at 12:24, Norris had documented a start time of 12:19 on her personal calendar, but her security swipe card data reflects that she entered the building at 12:16 and again at 12:24. Rollins Decl. Ex. D at 4 [ECF No. 187-4] (Norris's personal calendar "tracking wage theft"); Rollins Decl. Ex. E at 2 [ECF No. 187-5] (swipe card data). Security card swipe data showed that Norris had entered the building twice on approximately 75% of her shifts; this suggests that she left the building and was not, in fact, working pre-shift work as she alleged. *See* Rollins Decl. Ex. E. Norris was unable to provide a clear explanation for her double-entry practice, but she did acknowledge that she was a smoker and would sometimes take smoke breaks while working for Defendants. *See* Norris Dep. 230:3–234:12.[2]

---

[2] Norris's testimony otherwise calls into doubt her ability to act as a class representative. *See, e.g., id.* at 15:23–16:19 (discussing her social-media posts about voter fraud and how those behind voter fraud deserved the death penalty), 19:2–15 (accusing defense counsel of being paid by "the Clintons" for their work in this case), 43:17–20 (stating her belief that "the whole government is part of the Illuminati" and that the courts and justice system are similarly corrupt), 269:19–270:6 (testifying that she believes there may be a conspiracy between the Defendants, federal government, and "corrupted

Similarly, Michalak's swipe card data showed that she would typically arrive just a few minutes before the scheduled start time of her shift, contradicting her claim that she arrived ten to fifteen minutes early to perform pre-shift work. *See* Rollins Decl. Ex. F [ECF No. 187-6]; Michalak Dep. at 28:5–29:21, 87:8–21. Michalak's proffered explanation for this is that she had previously entered the building with a large group of people, and someone else swiped her in; she would then go back out to her car, where she always left her cell phone, to call her son and let him know she had made it to work, and only on that second entrance to the building would she swipe her own card. Michalak Dep. at 74:2–82:9. She admits that a reasonable person would not believe her explanation. *Id.* at 182:1–183:6.

Loepp's testimony did not reveal the same issues with her physical presence in the building during the alleged pre-shift work, but she did testify that there was no "requirement" to arrive early—it was her personal desire to be "organized" that motivated the pre-shift work. Loepp Dep. at 103:15–104:17. She also testified that she is not asserting a claim of her own in this case, and that she is just a witness to what happened. *Id.* at 48:16–50:20.

D

As a result of the foregoing revelations, the Parties have agreed that "collective or class action treatment [would be] inefficient" and request that the Court decertify the conditionally certified class and dismiss the Named Plaintiffs' claims with prejudice. Mot.

---

California"), 306:15–24 (claiming she is an "independent agent" for "we the people," who have been brainwashed by the government); *see also* Mem. in Supp. at 8–10, 20–21.

¶¶ 3, 6. The Parties have made clear that they "have not reached a settlement, and Defendants have not paid (nor have they agreed to pay) any compensation to Plaintiffs or their counsel" in connection with this agreement as to decertification and dismissal. *Id.* ¶ 5; *see also* Rollins Decl. ¶ 6; Pls.' Resp. at 1–2 [ECF No. 188] ("[A]fter the Defendants informed Plaintiffs they intended to file motions for decertification and other relief, Plaintiffs determined it would not be appropriate to engage in further litigation pursuant to Fed. R. Civ. P. 11."). In accordance with the Court's January 24, 2019 Order, they now seek court approval of their requested decertification and dismissal.

II

A

The first order of business is the request for decertification. Under § 216(b) of the FLSA, claims can be adjudicated as collective actions if the plaintiffs are "similarly situated" and all "give[] [their] consent in writing" to become parties to the action. 29 U.S.C. § 216(b). Although § 216(b) is silent as to the process for certifying a class and the standard for being "similarly situated," courts in this District have adopted the two-stage approach first articulated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987):

> The first stage, or the "notice stage," usually occurs early on in the lawsuit, when the Court determines whether notice of the action should be given to putative collective action members. Because the court has minimal evidence before it, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.
>
> The similarly situated analysis is undertaken again at the second stage of the analysis when the defendant moves for

8

> decertification of the collective class. During this second stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

*Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1017–18 (D. Minn. 2007) (citations omitted).

"At the second stage, now germane, a defendant may move to decertify the class if, after discovery, the evidence shows that members of a conditionally certified class are not similarly situated. The defendant's motion to decertify is analyzed under a stricter post-discovery standard." *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005). As the court noted in *Nerland*, "[d]uring this second stage, the court has much more information on which to base its decision." 564 F. Supp. 2d at 1017. Relevant considerations include: "(1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.* at 1018. All three considerations favor decertification here.

As for the first factor, the Named Plaintiffs' testimony revealed that there is neither a "common policy" nor a "common injury" of required, uncompensated pre-shift work. *Norris v. Bluestem Brands, Inc.*, No. 16-cv-03954 (SRN/TNL), 2018 WL 1972473, at *4 (D. Minn. Apr. 26, 2018). All three Named Plaintiffs testified that this pre-shift work was not truly a "requirement"—at most, it was a "suggestion." Michalak Dep. at 30:9–33:12;

9

Loepp Dep. at 103:15–104:17; Norris Dep. at 146:14–147:20. When Michalak was asked to point to evidence of the alleged unwritten policy requiring pre-shift work, she could not remember when it was sent, who sent it, or anything else about what it said. *See* Michalak Dep. at 30:18–23, 33:8–16. When Norris was asked about the source of the alleged requirement, she cryptically testified that it was "common knowledge through the thing." Norris Dep. at 345:12–22. And as Defendants suggest, it seems that the three Named Plaintiffs would have had different experiences with any such unwritten requirement, if it even existed, because they were managed by different supervisors. *See* Mem. in Supp. at 13 ("It is no surprise, then, that Plaintiffs—who held different kinds of jobs and worked different shifts and generally reported to different people—had wildly dissimilar understandings and experiences with regard to any alleged 'requirement' of pre-shift work."); *see, e.g.*, *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1064 (D. Minn. 2011) (finding a lack of common training "militates against finding that Plaintiffs are similarly situated"). The Named Plaintiffs' deposition testimony also poked holes in their alleged injury of uncompensated work. Both Norris's and Michalak's swipe card data undermined their claims that they were in the building working for ten to fifteen minutes before each shift. *See* Rollins Decl. Exs. E–F. The swipe card data also reveals, double entries aside, that the Named Plaintiffs did not consistently arrive at work ten to fifteen minutes early. *See id.*

With respect to the second factor, even if the Named Plaintiffs were required to complete pre-shift work, and they sporadically did so, there will be individualized defenses to these claims. The Defendants would be entitled to defend against Norris's claim by

presenting the theory that she was on a smoke break; against Michalak's claim by undermining her claimed explanation about coworkers swiping her in and leaving her cell phone in her car; and against Loepp's claim by arguing that it was Loepp's own desire to be organized that motivated her pre-shift work. *See* Mem. in Supp. at 16–18. This "possibility of mini-trials" and presenting "individualized defenses as to the credibility" of each Named Plaintiff "render[s] collective treatment unmanageable." *Soderberg v. Naturescape, Inc.*, No. 10-cv-3429 (PAM/JJG), 2011 WL 11528148, at *11 (D. Minn. Nov. 3, 2011); *see also White v. 14051 Manchester, Inc.*, 301 F.R.D. 368, 377 (E.D. Mo. 2014) (concluding credibility issues with class representatives' testimony favored decertification). Additionally, as Defendants point out, at least half of the 107 Opt-In Plaintiffs were part-time employees, which means they were scheduled to work fewer than forty hours a week and Defendants may have an individualized defense as to overtime compensation in those cases. Mem. in Supp. at 19 (citing *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933–34 (E.D. Ark. 2012)).

The third and final factor, fairness and procedural considerations, also militates in favor of decertification. Though the purpose of § 216(b) actions under the FLSA is to "reduc[e] the burden on plaintiffs through the pooling of resources" and "resolv[e] common issues of law and fact that arise from the same illegal conduct," those purposes cannot be served when there are not common issues of law and fact. *Cruz*, 764 F. Supp. 2d at 1063 (citation and internal quotation marks omitted)). If any of the Opt-In Plaintiffs were, in fact, required to regularly perform pre-shift work without pay, "[t]here is a strong incentive for [them] to pursue individual claims," making decertification fair. *Id.*

(recognizing that dismissal without prejudice can be "akin to dismissal with prejudice" for plaintiffs with only nominal damages). Accordingly, the conditional FLSA class will be decertified.

B

Because the Court agrees with the Parties that this conditional FLSA class should be decertified, the Opt-In Plaintiffs' claims must be dismissed without prejudice. *Cruz*, 764 F. Supp. 2d at 1064; *see also Nerland*, 564 F. Supp. 2d at 1025–26 ("[T]he effect of a court order directing the decertification of the conditional class in this case would be a dismissal of all of the opt-in plaintiffs without prejudice, placing each plaintiff back at square one . . . .").

Additionally, the Opt-In Plaintiffs' must receive notice of the Court's decertification decision and its disposition of their claims. The Parties have filed a proposed Notice of Decertification of Conditionally Certified Class. ECF No. 179-1. This proposed Notice informs the Opt-In Plaintiffs, among other things, that the Court's order decertifying the conditionally certified class is "a ruling that means this lawsuit will not proceed as a class or collective action, and that . . . you are no longer a party to this lawsuit." *Id.* It also appropriately informs them that they "are not responsible for any attorneys' fees or costs associated with this action," and provides Plaintiffs' attorneys' contact information for any questions they might have. *Id.* The Court's only concern is that the notice letter does not apprise the Opt-In Plaintiffs about the significance of dismissal without prejudice and the statute of limitations. *Cf. Smith*, 404 F. Supp. 2d at 1155 n.9; *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 694 (Minn. 1980). Therefore, the Court directs the

Parties to add the following sentence to the end of the second paragraph of the proposed Notice: "**Your claim has been dismissed without prejudice.  If you wish to pursue your claim, you will need to initiate a new lawsuit.  There are statutes of limitations and legal deadlines, and failure to act within these times can result in waiver of your rights.  Accordingly, you should seek legal advice as soon as possible if you wish to pursue your claim.**"  Additionally, the Court directs the Parties to provide a copy of this Order when notifying the Opt-In Plaintiffs of the dismissal of their claims.[3]  *Cf. Smith*, 404 F. Supp. 2d at 1155 n.9.

### III

Defendants have filed an unopposed motion to dismiss the Named Plaintiffs' claims, ECF No. 186, but also maintain that those claims were already effectively dismissed by the Parties' Stipulation, ECF No. 179.  *See* Mem. in Supp. at 21 ("[G]iven that Plaintiffs and Defendants have not reached a settlement agreement and that Defendants have not paid any compensation to Plaintiffs in any form . . . Defendants respectfully submit that Plaintiffs' claims were effectively dismissed with prejudice by way of the parties' Rule 41 stipulation and request that the Court recognize that dismissal.").  The Court declines to recognize that dismissal as automatically occurring "without court order" pursuant to Rule 41(a)(1)(A)(ii), and instead will assess the requested dismissal under FLSA precedent.  *Cf.* Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").

---

[3]   Plaintiffs' counsel may send a paper copy of the Order by U.S. Mail, or alternatively may elect to provide an electronic copy (*e.g.*, by including a URL where the Order may be viewed online, or by attaching the Order to an email).

The Court's previous conclusion that "nothing in Rule 41 gives the Parties an unfettered, unilateral right to stipulate to dismissal" in FLSA actions remains true even after the revelation that the Parties did not reach a monetary settlement. ECF No. 181 at 11. As the Court's Order explained, Rule 41's limiting prefatory clause makes Rule 41 dismissal subject to "any applicable federal statute," which includes section 216(b) of the FLSA. *Id.* (quoting Fed. R. Civ. P. 41(a)(1)(A)). Court approval of dismissal of FLSA claims, even absent a settlement, remains at least advisable, and perhaps required, here. *See Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, 41 (E.D.N.Y. 2014) ("[A]lthough employees, though counsel, often voluntarily consent to dismissal of FLSA claims and, in some instances, are resistant to judicial review of settlement, the purposes of [the] FLSA require that it be applied *even to those who would decline its protections*." (citation and internal quotation marks omitted) (emphasis added)).

Even in the absence of a monetary settlement, the Stipulation represents an agreement to dispose of the Named Plaintiffs' FLSA claims, which requires judicial approval because "employee rights . . . under the FLSA 'cannot be abridged by contract or otherwise waived.'" *See McInnis v. Ecolab Inc.*, No. 11-cv-02196 (SRN/JJK), 2012 WL 892187, at *1 (D. Minn. Feb. 17, 2012) (quoting *Barrentine v. Arkansas–Best Freight Sys.*, 50 U.S. 728, 740 (1981)), *R&R adopted*, 2012 WL 892192 (D. Minn. Mar. 15, 2012); *see also Black's Law Dictionary* (10th ed. 2014) (defining "settlement" as "[a]n agreement ending a dispute or lawsuit," without regard to the exchange of money). Despite the fact that the Parties' agreement is not a traditional monetary settlement, and it will not bind the Opt-In Plaintiffs, the Court is still obligated to carefully ensure that the agreement

disposing of the Named Plaintiffs' FLSA claims "represents a fair compromise of a bona fide wage and hour dispute" and "is fair and reasonable for all who are affected by it"—including the Named Plaintiffs, Opt-in Plaintiffs, and Defendants. *McInnis*, 2012 WL 892187, at *2. In doing so, the Court "may consider a multitude of factors, including (1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the plaintiff's success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." *Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017).

The presence of a bona fide dispute typically favors court approval of a settlement. But here, in this unusual posture, it is the *absence* of a bona fide dispute that favors court approval of the Parties' agreement to dismiss the Named Plaintiffs' claims with prejudice. At one point, there certainly was a bona fide dispute, as evidenced by the thoroughly litigated issue of certification. *See, e.g.*, ECF Nos. 23 (motion for conditional certification), 36 (motion to dismiss), 77 (renewed motion for conditional certification), 105 (objection to conditional-certification decision), 152 (third motion for conditional certification). As in *Brask v. Heartland Automotive Services, Inc.*, both Parties litigated certification and actively participated in discovery; several depositions were taken and targeted document discovery was conducted. *See* No. 06-cv-00011 (RHK/AJB), 2006 WL 2524212, at *2 (D. Minn. Aug. 15, 2006). But the Parties have come to agree that there is no longer a bona fide dispute. The Court is confident the Parties were represented by skilled, experienced counsel who advocated and negotiated at arm's length. *Cf. McInnis*, 2012 WL

892187, at *6. The Court is also confident that if the Named Plaintiffs' claims were meritorious, the Parties would still be litigating bona fide disputes.

The Court also readily concludes that the dismissal with prejudice of the Named Plaintiffs' claims is fair and equitable. "The primary consideration . . . is the strength and nature of the claim in light of the possible defenses." *Brask*, 2006 WL 2524212, at *2. As discussed in conjunction with the issue of decertification, the Named Plaintiffs no longer appear to have viable claims, or at least not strong ones. Surely if the Named Plaintiffs had viable claims, counsel would have every incentive to litigate them and recover fees and costs. But Plaintiffs' counsel has suggested that they could not, in good faith under Rule 11, proceed with these claims. *See* Mem. in Supp. at 3; Pls.' Resp. Mem. at 2. Accordingly, the Named Plaintiffs' claims will be dismissed with prejudice.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Unopposed Motion to Decertify Conditionally Certified Collective Action [ECF No. 185] is **GRANTED**. The class this Court conditionally certified in its January 10, 2018 Order is hereby **DECERTIFIED**.

2. The Opt-In Plaintiffs' claims are hereby **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiffs' counsel shall, within 14 days of the date of this Order, issue the proposed Notice [ECF No. 179-1] as modified by Part II.B, *supra*, to all Opt-In Plaintiffs of the conditionally certified class.

4. Defendants' Unopposed Motion to Dismiss Named Plaintiffs' Claims with Prejudice [ECF No. 185] is **GRANTED**. All claims asserted by Named Plaintiffs Tina Norris, Sally Michalak, and Wendy Loepp are hereby **DISMISSED WITH PREJUDICE**.

5. The foregoing dismissals of the Opt-In Plaintiffs' and Named Plaintiffs' claims are without costs, disbursements, or attorneys' fees to any of the Parties.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 22, 2019               s/ Eric C. Tostrud
                                    Eric C. Tostrud
                                    United States District Court